UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

LAUREN BARHAM and MATTHEW UREY,

       Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD. and
ID TOURS NEW ZEALAND LIMITED,

       Defendants.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs sue Defendants and allege:

### **JURISDICTIONAL AND PRELIMINARY ALLEGATIONS**

1. The Plaintiff, LAUREN BARHAM, is a citizen of Virginia.[1]

2. The Plaintiff, MATTHEW UREY, is a citizen of Virginia.

3. Defendant, ROYAL CARIBBEAN CRUISES LTD. (hereinafter "RCCL"), is a foreign entity under the Republic of Liberia with its principal place of business in Florida.

4. Defendant, ID TOURS NEW ZEALAND LIMITED (hereinafter "Excursion Entity"), upon information and belief, is an entity based in New Zealand.

5. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

---

[1] Plaintiffs were married on October 18, 2019, and the incident involved in this lawsuit occurred on their honeymoon.  Due to the catastrophic injuries that resulted from the incident, LAUREN BARHAM has been unable to legally change her last name.  However, this will happen in due course and Plaintiffs will amend accordingly.

6. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7. At all times material hereto, RCCL, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

    d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 and/or 48.193;

    e. The acts of RCCL set out in this Complaint occurred in whole or in part in this county and/or state.

    f. RCCL was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard their vessels.

8. RCCL is subject to the jurisdiction of the Courts of this state.

**The Excursion Entity's contract with RCCL meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).**

9. At all times material hereto, the Excursion Entity entered into a contract with RCCL concerning the subject excursion, which, upon information and belief, (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Entity agreed to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between RCCL and the Excursion Entity meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

**The Excursion Entity's continuous and systematic general business contacts with Florida satisfy a finding of general jurisdiction under Florida Statute § 48.193(2).**

10. At all times material hereto, the Excursion Entity has engaged in substantial and not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts and/or supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; and/or (j) participating in cruise industry trade shows in Miami (e.g., Sea trade).[2]

11. At all times material hereto, the Excursion Entity has been in the business of providing excursions to cruise line passengers in New Zealand through Florida-based cruise lines, including RCCL, Celebrity, Carnival and/or NCL. In entering into contracts with these Florida-based cruise lines, the Excursion Entity agreed to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, the Excursion Entity received the benefit of the cruise lines' advertising and promotional efforts.

---

[2] At all times material hereto, the Excursion Entity's arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Herein, unlike *Daimler*, the Plaintiffs are suing a Florida-based cruise line (RCCL) for injuries sustained while participating in an excursion operated by an agent of the cruise line (the Excursion Entity) – an agent set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, RCCL is "at home" in this jurisdiction because RCCL maintains its principal place of business in Florida. Thus, under *Daimler*, the Excursion Entity is also deemed "at home" in this jurisdiction by its direct and indirect contacts with Florida (through the Florida-based cruise lines).

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

**The Excursion Entity's activities in Florida satisfy
a finding of jurisdiction under Fed. R. Civ. P. 4(k).**

12. At all times material hereto, the Excursion Entity is also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) the Excursion Entity is not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over the Excursion Entity is consistent with the United States Constitution and laws based on the Excursion Entity's minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. These minimum contacts are set forth in the above allegations, and include, but are not limited to, the Excursion Entity's location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

## FACTS COMMON TO ALL COUNTS

13. At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, *Ovation of the Seas* (hereinafter "the vessel").

14. At all times material hereto, the Excursion Entity owned and/or operated the subject excursion, which was offered, arranged for, sponsored, recommended, marketed, sold, co-operated and/or managed by RCCL.

15. On or about December 9, 2019, Plaintiffs were paying passengers aboard the vessel, which was in navigable waters.

**Promotional Material and Statements Concerning
Shore Excursions Generally and the Subject Excursion Specifically**

16. After booking the subject cruise, RCCL sent Plaintiffs promotional material, which provided information and descriptions of shore excursions, including the excursion entitled,

"White Island Volcano Experience Cruise and Guided Exploration" (hereinafter "subject excursion").

17. In addition to the promotional material sent to Plaintiffs, RCCL's website contained information and descriptions of shore excursions, including the subject excursion.  Tickets for shore excursions, including the subject excursion, were also available for sale on RCCL's website.

18. RCCL also had promotional materials at its shore excursion desk aboard the vessel and/or other areas of the ship with information and descriptions of shore excursions, including the subject excursion.  Tickets for shore excursions, including the subject excursion, were also available for sale at RCCL's shore excursion desk aboard the vessel.

19. Among the foregoing promotional material RCCL made available and/or provided to Plaintiffs was its brochure (the Shore Excursion Guide), which contained the following information regarding shore excursions marketed and sold by RCCL to its passengers and Plaintiffs:

    a.  Shore excursions and/or excursion operators were described in proprietary language, with RCCL referring to them as "<u>our</u> destination experts," "Royal Caribbean Shore Excursions," and/or "<u>our</u> various shore excursions"; and

    b.  RCCL represented that it actively participated in the operation of the shore excursions (i.e.: "<u>We team up</u> with the top tour operators in each port <u>to deliver</u> the highest-quality, handpicked tours.").

For example, the photograph below depicts the promotional material and information made available on RCCL's brochure:



General Information
Royal Caribbean International prides itself in providing an array of exciting, appealing and enriching tours that make your experience unforgettable.  As you travel to some of the most exciting places in the world, let our destination experts plan your time ashore.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

**Tour with us for unbeatable value**

Unique experiences crafted for all kinds of travelers make Royal Caribbean Shore Excursions the best all-around value.

**Best local tours:** We team up with the top tour operators in each port to deliver the highest-quality, handpicked tours.

**In-depth experiences:** Immerse yourself in culturally rich tours that change the way you see the world.

**Worry-free guarantee:** Enjoy peace of mind with guaranteed return to the ship and hassle-free cancellation.

. . . .

**How to Book a Shore Excursion**
With Royal Caribbean International, you can book your shore excursions in advance up to 2 days prior to the sailing online at www.RoyalCaribbean.com/shoreexcursions   Space is limited, so we recommend you book pre-cruise in order to ensure that you don't miss out on your tours of choice.

. . . .

For your convenience, information about our various shore excursions can be found and downloaded online. You can see pictures, and sort by port of call or activity type. All you need is your reservation ID, ship name and sail date to choose and purchase a tour.

20. Also among the foregoing promotional material RCCL made available and/or provided to Plaintiffs was its website, which contained the following information regarding shore excursions marketed and sold by RCCL to its passengers and Plaintiffs:

   a.  Shore excursions and/or excursion operators were described in proprietary language, with RCCL referring to them as "<u>its</u> tour operators" and/or "<u>our</u> Destination Insiders";

   b.  Shore excursions and/or excursion operators were "Certified for Quality," with RCCL representing that it "thoroughly reviewed its tour operators," including each excursion's "guide" that "provides proper equipment and ensures the safety of gear used on active excursions…"; and

   c.  Shore excursions and/or excursion operators were deemed to be "reputable and insured."

For example, the photographs below depict the promotional material and information made available on RCCL's website:



**Insider Take: Why You Should Go On A Shore Excursion**

Tips from a Royal Caribbean crew ambassador.

. . . .

**2. They're Certified For Quality**

Royal Caribbean thoroughly reviews its tour operators, whether it's the guide on a sightseeing tour or the one that provides proper equipment and ensures the safety of gear used on active excursions like scuba diving, quad riding, and zip lining. Because guides are locally based, you'll get an authentic experience from an expert in a safe, trusted environment.

. . . .

**4. Peace Of Mind**

From your departure point and lunch to round-trip transportation, Royal Caribbean has arranged the best experiences for an incredible value, and every detail is taken care of—leaving you free to enjoy the day without handling any of the logistics. "It's simple and reliable," Sydney says. "There's no hassle of negotiating with cab drivers or waiting around for your train to arrive. You get the most out of your day in port."



**SHORE EXCURSIONS**

. . . .

Discover the world your way. Our Destination Insiders design unique, memory-generating destination experiences tailored to your needs. These seasoned travelers, have extensive knowledge and years of experience sailing around the world, which ensures that your custom experience captures the very best of every destination.



**SHORE EXCURSIONS**

. . . .

the peace of mind that Royal Caribbean works with reputable and insured tour operators who will ensure you're back to the ship in time for your next adventure.

21. With regard to the subject excursion specifically, RCCL's promotional material and information (including its website description shown below), RCCL only referred to White Island as "one of the most active volcanoes in the world."  The potential danger of participating in this excursion was not open or obvious to the Plaintiffs based on this description because an "active" volcano is defined as a volcano that has had at least <u>one eruption</u> during the past <u>10,000 years</u>. Unbeknownst to Plaintiffs, however, this particular volcano had erupted <u>multiple times in the past ten years</u>, with the most recent being merely three years before the subject cruise, in 2016.  In fact, the volcano had erupted in 2016, 2013, 2012, 2000 and several times in the 1980s!  However, RCCL did not notify, warn, or disclose the history of four eruptions since 2000.  Furthermore, the volcano was showing signs of unrest for several weeks before the subject eruption.  For instance, volcanic tremors and sulphur dioxide gas were at their highest levels since the last eruption in 2016, indicating that an eruption was more likely to occur.  In addition, a few weeks prior to the subject excursion, the volcano's alert level was raised to a level 2 (the highest level it can be when it is not erupting), indicating a heightened volcanic unrest due to the increased activity. Additionally, two weeks prior to the subject eruption, there was a 5.9 earthquake with an epicenter located approximately 6.2 miles northeast of the volcano – a notable piece of information since seismic activity provides an increased risk of hydrothermal eruptions due to a reduction of pressure within the geothermal system.  Yet RCCL failed to notify passengers of (1) the numerous eruptions since 2000, (2) the heightened volcanic activity in the several weeks leading up to the excursion, (3) the significant changes in the volcanic activity that led to the increased alert level, (4) the seismic activity in the area leading to an increased risk of eruption; or (5) any indication, notification, or warning of <u>any</u> increased danger whatsoever, or direction for passengers to refer to a specific source to obtain such information and make an informed decision for themselves.  In addition, while RCCL classified the excursion as "strenuous," such classification merely warned

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

passengers to consider their "physical fitness level and medical history" when determining whether the tour was appropriate for them and countered that classification by stating, "Since the majority of the volcano sits beneath the sea, you head straight to the action without much, if any, climbing at all."  Finally, RCCL failed to mention or warn of <u>any</u> risk of death or severe injuries whatsoever.

---

# WHITE ISLAND VOLCANO EXPERIENCE CRUISE AND GUIDED EXPLORATION

### Tauranga, New Zealand
### December 09, 2019

| | | | |
|---|---|---|---|
| **Code:** | TR93 | | |
| **Prices:** | Adult 258.99 / Child 210.99 USD | **Restrictions:** | N/A |
| **Duration:** | 7 hrs | **Departure Times:** | 08:00 am |

Journey to sunny Whakatane for a scenic boat ride along the picturesque Bay of Plenty to White Island for an unforgettable guided tour of New Zealand's most active volcano. In fact, White Island is one of the most active volcanoes in the world. Zodiac inflatable crafts take you from your boat directly into the crater complex. Since the majority of the volcano sits beneath the sea, you head straight to the action without much, if any, climbing at all. Gas masks/breathing apparatus helps you get up close to roaring steam vents, bubbling pits of mud, hot volcanic streams and the amazing lake of steaming acid. And the vivid hues of yellow and orange resulting from all sulfur on the island make for remarkable photos, so have your camera ready.

### Highlights:

› White Island: Tour one of the world's most active volcanos; your tour takes you directly to the crater complex, since most of the volcano sits beneath the sea.
› Get close to the drama: Gas masks help you get near roaring steam vents, bubbling pits of mud, hot volcanic streams and the amazing lake of steaming acid.

**Important Notes:**

› Guests in wheelchairs and others with limited mobility should not select this tour.

› Guests must consider their physical fitness level and medical history when determining whether this tour is appropriate.

› Guests with pre-existing neck, back, knee and/or shoulder injuries, cardiac conditions, asthma, diabetes, epilepsy, other heart or respiratory conditions or any other medical condition must take particular caution when selecting a tour — particularly tours categorized as "strenuous."

› Guests who have concerns must consult with their personal physician before engaging in any activity that may be strenuous for them.

**What to Bring:**

› SeaPass card and photo identification

› Camera

› Sun protection

› Cash/credit cards

**What to Wear:**

› Walking shoes

› Hat and sunglasses

› Breathing apparatus (provided, to wear on White Island)

22. The information and/or material RCCL made available and/or distributed to passengers concerning shore excursions, including the Plaintiffs concerning the subject excursion, was based on the description and/or information provided to RCCL by the Excursion Entity and/or by RCCL's inspections and/or approval of the subject excursion and/or of the Excursion Entity. Accordingly, Defendants undertook a duty to accurately advise passengers, including the Plaintiffs, concerning the subject excursion in order to obtain a profit for Defendants, and Defendants were required to execute that duty utilizing reasonable care under the circumstances.

## Subject Incident

23. Relying on the safety and reputability of RCCL as well as RCCL's representations regarding its shore excursions, including the subject excursion, Plaintiffs purchased the ticket for the subject excursion directly from RCCL and/or received the excursion ticket directly from RCCL aboard the vessel.  The Plaintiffs obtained all of the information regarding the subject excursion

from RCCL and made all of the reservation arrangements for the subject excursion exclusively with RCCL.  In turn, RCCL received a portion of Plaintiffs' ticket price for the subject excursion.

24. The Plaintiffs reviewed RCCL's information and/or material concerning the subject excursion and relied upon RCCL's representations exclusively and to Plaintiffs' detriment in deciding to purchase the subject excursion from RCCL and to participate in same during Plaintiffs' cruise aboard the vessel.

25. Based upon RCCL's information and/or material concerning the subject excursion, Plaintiffs reasonably understood that RCCL conducted regular inspections of the excursion location, volcanic activity, and operators of the subject excursion to ensure that they were reasonably safe, and Plaintiffs relied upon such understanding to Plaintiffs' detriment in deciding to purchase the subject excursion from RCCL and to participate in same during Plaintiffs' cruise aboard the vessel.

26. On or about December 9, 2019, as part of Plaintiffs' cruise aboard the vessel, which was for the Plaintiffs' honeymoon, Plaintiffs participated in the subject excursion in New Zealand. This excursion was arranged for, sponsored, recommended, operated, marketed and/or sold by RCCL as part of the cruise aboard the vessel.  Unbeknownst to Plaintiffs at the time, the excursion was operated by the Excursion Entity.

27. At the beginning of the excursion, the tour guides did not inform passengers and/or the Plaintiffs of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption.  The passengers were taken to what appeared to be the center of the volcano.  Shortly thereafter, the volcano erupted, and as a result, Plaintiffs sustained severe burns.  Mr. Urey sustained burns to 54% of his body, with 30%-39% being third-degree burns; and Ms. Barham sustained burns to 23% of her body, with 10%-19% being third-degree burns, depicted below.

*Matthew Urey's Burns*



*Lauren Barham's Burns*



28. After the incident, RCCL canceled all shore excursions to active volcanoes, including the subject excursion.  This action should have been taken before Plaintiffs' incident, especially considering that RCCL knew or should have known that the subject excursion was unreasonably hazardous before the subject incident occurred.

### RCCL's Notice of the Dangerous Excursion and/or Incompetent Provider

29. At all times material hereto, RCCL knew or should have known that the subject excursion was unreasonably hazardous and/or was not competently operated by properly trained and/or supervised persons for reasons that include, but are not limited to, (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

30. Prior to the subject incident, RCCL was or should have been on notice that the excursion was not reasonably safe for passengers based on its initial approval process and/or its yearly inspections of the subject excursion.  Specifically, in approving and offering the subject excursion to its passengers, RCCL conducted an investigation of the excursion and/or the Excursion Entity. In doing so, RCCL assumed a duty to perform such investigation with reasonable care.  Even a cursory look into White Island would have revealed that the volcano was active numerous times in the past ten years.  This information should have been enough for RCCL to realize the volcanic activity level was too high and the risk was too great for its passengers.

31. Also prior to the subject incident, RCCL was or should have been on notice that the excursion was not reasonably safe for passengers based on prior incidents of eruptions during volcano tours resulting in injuries to tourists.  For instance, approximately 1.5 years before the

subject incident, a group of tourists were injured when a volcano in Hawaii (Kilauea) erupted during their tour.  Royal Caribbean was aware of the incident because, due to the eruption and/or injuries, it temporarily canceled cruises and/or tours scheduled to visit the area.[3] This incident should have been enough for RCCL to realize that tours to active volcanoes were unreasonably dangerous.  RCCL should have canceled all excursions to active volcanoes then, instead of waiting for dozens of its own passengers to be injured or killed.

32. In addition, RCCL knew or should have known that there was a high potential for the volcano to erupt during Plaintiffs' excursion based on the increased alert level issued by New Zealand's volcano monitoring service, GeoNet, weeks before Plaintiffs' cruise.  (New Zealand's Volcanic Alert System is included below for reference.)

### New Zealand Volcanic Alert Level System

| | Volcanic Alert Level | Volcanic Activity | Most Likely Hazards |
|---|---|---|---|
| Eruption | 5 | Major volcanic eruption | Eruption hazards on and beyond volcano* |
| Eruption | 4 | Moderate volcanic eruption | Eruption hazards on and near volcano* |
| Eruption | 3 | Minor volcanic eruption | Eruption hazards near vent* |
| Unrest | 2 | Moderate to heightened volcanic unrest | Volcanic unrest hazards, potential for eruption hazards |
| Unrest | 1 | Minor volcanic unrest | Volcanic unrest hazards |
| | 0 | No volcanic unrest | Volcanic environment hazards |

An eruption may occur at any level, and levels may not move in sequence as activity can change rapidly.

Eruption hazards depend on the volcano and eruption style, and may include explosions, ballistics (flying rocks), pyroclastic density currents (fast moving hot ash clouds), lava flows, lava domes, landslides, ash, volcanic gases, lightning, lahars (mudflows), tsunami, and/or earthquakes.

Volcanic unrest hazards occur on and near the volcano, and may include steam eruptions, volcanic gases, earthquakes, landslides, uplift, subsidence, changes to hot springs, and/or lahars (mudflows).

Volcanic environment hazards may include hydrothermal activity, earthquakes, landslides, volcanic gases, and/or lahars (mudflows).

*Ash, lava flow, and lahar (mudflow) hazards may impact areas distant from the volcano.

---

[3] https://www.nytimes.com/2018/05/28/travel/hawaii-tourism-kilauea-volcano-eruption.html

33. Specifically, on October 30, 2019 (approximately six weeks before the incident), the Volcanic Alert Level was at 1, but the Volcanic Alert Bulletin noted there was "an increase in activity…"  The bulletin went on to state that "[o]ver the last several months, [GeoNet] observed a change in the amount of SO2 gas output and level of volcanic tremor. Both show[ed] an increasing trend and [were] at the highest level since 2016[,]" which was the last time the same volcano erupted.

34. On November 18, 2019 (three weeks before the incident), the Volcanic Alert Level was raised to 2, which is the highest level it can be when it is not erupting, as demonstrated above. According to the Volcanic Alert Bulletin, "monitored parameters show[ed] further increases in activity. Hazards on the island [were] now greater than during the past few weeks…. The patterns of signals [were] similar to those through the 2011-2016 period and suggest[ed] that Whakaari/White Island may be entering a period where eruptive activity is more likely than normal…"

35. On November 25, 2019 (two weeks before the incident), the Volcanic Alert Level remained at 2.   The Volcanic Alert Bulletin stated "no new changes [were] observed[,]" and it reiterated that "[t]he monitoring observations [were] similar to those seen in the more active 2011-2016 period and suggest[ed] that Whakaari/White Island may be entering a period where eruptive activity is more likely than normal."

36. On December 3, 2019 (less than one week before the incident), the Volcanic Alert Level remained at 2, and the Volcanic Alert Bulletin said "[m]oderate volcanic unrest continue[d] at Whakaari/White Island, with substantial gas, steam and mud bursts observed… Overall, the monitored parameters continue[d] to be in the expected range for moderate volcanic unrest and associated hazards exist[ed]. The monitoring observations bear some similarities with those seen during the 2011-2016 period when Whakaari/White Island was more active and stronger volcanic

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

activity occurred. Observations and data to date suggest[ed] that the volcano may be entering a period where eruptive activity is more likely than normal."

37.   At all times material hereto, RCCL knew or should have known of the above volcanic alert levels by directly monitoring the levels itself or being informed of such levels by the Excursion Entity.

38. Further, with RCCL offering the subject excursion to its passengers and, thus knowing that its passengers may encounter potential hazards or dangers in the area of the excursion, RCCL had a duty to warn its passengers of the hazards or dangers they may so encounter.  *See, e.g., Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012); *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So.2d 248 (Fla. 3d DCA 1985) (a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit). In addition to the increased alert level issued by New Zealand's volcano monitoring service, GeoNet, weeks before the subject cruise, the following additional information was readily available to RCCL, and RCCL, in selling the subject excursion to its passengers, should have been aware of the following important information regarding the volcano:

a.   The volcano erupted in 2016, 2013, 2012, 2000 and several times in the 1980s;

b.   The volcano was showing signs of unrest for several weeks before the subject eruption – with volcanic tremors and sulphur dioxide gas at their highest levels since the last eruption in 2016, indicating that an eruption was more likely to occur; and

c.   Two weeks prior to the subject eruption, there was a 5.9 earthquake with an epicenter located approximately 6.2 miles northeast of the volcano – a notable piece of information since seismic activity provides an increased risk of hydrothermal eruptions due to a reduction of pressure within the geothermal system.

## COUNT I – NEGLIGENT MISREPRESENTATION AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

39. On or about May 27-29, 2019, Plaintiffs reviewed RCCL's website and RCCL's shore excursion brochure, including the information set forth in paragraphs 19-21 above.

40. At all times material hereto, RCCL's promotional material, including its website and/or brochure referenced above, which Plaintiffs reviewed, contained the statements and descriptions set forth in paragraphs 19-21 above.

41. At all times material hereto, RCCL's promotional material, brochures and/or website contained misrepresentations of material facts, including:

    a. Misrepresenting the activity level and/or activities involved in the subject excursion as "strenuous," which merely warned passengers to consider their "physical fitness level and medical history" when determining whether the tour was appropriate for them, and failed to mention the risk of death or severe injuries, as alleged in paragraph 21; and/or

    b. Implying that RCCL "thoroughly reviews" and/or verifies whether excursion providers utilize the proper equipment and/or ensure the safety of the gear used on excursions, as alleged in paragraph 20(b), when in actuality, the Plaintiffs were not provided with any equipment or gear to prevent them from getting burned during the subject excursion; and/or

    c. Misrepresenting that the excursion providers are "reputable," as alleged in paragraph 20(c), when in actuality, the subject excursion was not reasonably safe, for reasons alleged in paragraphs 27-38; and/or

    d. Mispresenting shore excursions, including the subject excursion, as being RCCL's excursions through the use of proprietary language, as alleged in paragraphs 19(a) and

20(a), when RCCL claims that it was an independent contractor's (not RCCL's) excursion; and/or

e.  Representing that shore excursion providers are insured, as alleged in paragraph 20(c), when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

f.  Representing and/or implying that excursion providers would be subject to personal jurisdiction in the United States and/or subject to United States and/or Florida law by contractually requiring all RCCL passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions), pursuant to its ticket contract, and/or advertising that its excursion providers are insured, as alleged in paragraph 20(c), when in actuality, excursion providers (including the Excursion Entity) challenge this Court's personal jurisdiction and have limited insurance coverage as alleged above.

42. At all times material hereto, the foregoing statements RCCL made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

a.  RCCL's initial approval process and/or yearly inspections of the Excursion Entity and/or the subject excursion, including, but not limited to, researching the volcano, having RCCL's representative(s) take the excursion, conducting site inspections, and reviewing the Excursion Entity's insurance, which did or should have revealed: (1) the excursion could result in death or severe injuries, thereby making it more serious than "strenuous"; (2) the excursion did not provide equipment or gear to prevent passengers

from getting burned; (3) the Excursion Entity and/or the subject excursion was not actually safe, reliable and/or reputable; and/or (4) the Excursion Entity's insurance contained limitations.

b. RCCL's own customs, practices, policies and/or procedures concerning: (1) its claim that excursions are provided by independent contractors and not RCCL, contrary to its representations; and/or (2) contractually requiring its passengers to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions).

43. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiffs) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion), as evident in the photographs included in paragraphs 19-20.

44. As a result thereof, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.   In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

## COUNT II – NEGLIGENT SELECTION AND/OR RETENTION AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

45. At all times material hereto, it was the duty of RCCL to provide Plaintiffs with reasonable care under the circumstances.

46. At all times material hereto, RCCL had a duty to select and/or hire competent and/or fit excursion operators.

47. At all times material hereto, as part of its duty to select and/or hire competent and/or fit excursion operators, it was incumbent on RCCL to diligently inquire into the Excursion Entity's competency and fitness.

48. On or about December 9, 2019, RCCL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances by selecting and/or retaining the Excursion Entity, which was incompetent and/or unfit based on the following:

  a. The failure of the Excursion Entity to provide a reasonably safe excursion, considering the subject excursion was in a volcano that was active multiple times just a few years before the incident; and/or

  b. The failure of the Excursion Entity to routinely monitor volcanic alert levels and/or volcanic activity to determine whether it was reasonably safe for passengers; and/or

  c. The failure of the Excursion Entity to have reasonably competent and/or trained and/or supervised individual(s) operating and/or leading the subject excursion, considering the tour guide did not notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

d. The failure of the Excursion Entity to have reasonably competent and/or trained and/or supervised individual(s) operating and/or leading the subject excursion, considering their decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

49. At all times material hereto, RCCL knew of the foregoing conditions causing the Excursion Entity's incompetence and/or unfitness, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through:

a. Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that RCCL was aware of, as alleged in paragraph 31, which did or should have revealed that the Excursion Entity's excursion was not reasonably safe and/or was incompetently operated because (1) it was on an active volcano (like Kilauea) that had erupted multiple times just a few years before the incident; and/or (2) it was proceeding to conduct tours despite the increased volcanic alert levels. RCCL knew the excursion was not being canceled or postponed when the volcanic levels/activity increased because, despite the levels/activities increasing weeks before the incident (as discussed in paragraphs 32-38) and/or throughout their business relationship, RCCL sold tickets and paid the Excursion Entity for tours during that time period.

b. RCCL's initial approval process and/or yearly inspections of the Excursion Entity and/or the subject excursion, including, but not limited to, researching the volcano, having RCCL's representative(s) take the excursion, and conducting site inspections, as alleged in paragraph 30, which did or should have revealed: (1) the subject excursion was in a volcano that was active multiple times just a few years before the incident;

(2) the volcanic alert levels and/or volcanic activity were not being routinely monitored to determine whether it was reasonably safe for passengers, as evidenced by the excursion not being canceled or postponed when the levels/activity increased, as they did weeks before this incident (discussed in paragraphs 32-38); (3) the tour guide(s) did not notify passengers of the alert levels, the volcanic activity and/or the risk of eruption; (4) the Excursion Entity proceeded with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed, as evidenced by the excursion not being canceled or postponed when the levels/activity increased, as they did weeks before this incident (discussed in paragraphs 32-38). RCCL knew the excursion was not being canceled or postponed when the volcanic levels/activity increased because, despite the levels/activities increasing weeks before the incident (as discussed in paragraphs 32-38) and/or throughout their business relationship, RCCL sold tickets and paid the Excursion Entity for tours during that time period.

c.   Thoroughly inquiring into the Excursion Entity's certification(s), reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines, which did or should have revealed that the subject excursion was dangerous and/or not operated by a competent and fit operator for the reasons listed in paragraph 48(a)-(d).

d.   Periodically requesting and examining safety history reports from the Excursion Entity as well as periodically sending RCCL's own staff to visit the excursion site(s) and evaluate the excursion experience, which did or should have revealed that the subject excursion was dangerous and/or not operated by a competent and fit operator for the reasons listed in paragraph 48(a)-(d).

50. As a direct and proximate result of the Excursion Entity's incompetence and/or unfitness, the Plaintiffs were severely injured while participating in the subject excursion because: (1) the subject excursion was in a volcano that was active multiple times just a few years before the incident; (2) the increased volcanic alert levels and/or volcanic activity made visiting the volcano unreasonably dangerous; (3) the tour guide did not notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the Excursion Entity proceeded with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.  These factors caused and/or contributed to the Plaintiffs being severely burned.  Therefore, the subject incident would not have occurred but for the Excursion Entity's incompetence and/or unfitness.

51. As a direct and proximate result of the negligence of RCCL, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT III – NEGLIGENT FAILURE TO WARN AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

52. At all times material hereto, it was the duty of RCCL to provide Plaintiffs with reasonable care under the circumstances.

53. At all times material hereto, it was the duty of RCCL to warn passengers (like Plaintiffs) of dangers that were known, or reasonably should have been known, to RCCL in places where passengers (like Plaintiffs) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

54. On or about December 9, 2019, the Plaintiffs were participating in the subject excursion, which RCCL invited and reasonably expected Plaintiffs to participate in since RCCL sold Plaintiffs the tickets for the excursion.

55. On or about December 9, 2019, RCCL and/or its agents, servants, joint venturers and/or employees breached its duty to warn the Plaintiffs through the following acts and/or omissions:

a. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) of the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) the risk of death or severe injuries; and/or

b. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not inspect and/or monitor the Excursion Entity, the subject excursion, the volcanic alert levels, and/or the volcanic activity, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

c. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not verify that the subject excursion is reasonably safe and/or inspected, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

d. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity is not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

e. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity is not subject to jurisdiction in the United States, especially when RCCL contractually requires its passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

f. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity carries independent insurance from the cruise line that has lower limits and more limited coverage than RCCL's insurance; and/or

g. Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) the limits of the Excursion Entity's insurance.

56. The above acts and/or omissions caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion because Plaintiffs would not have purchased tickets for and/or participated in the subject excursion had RCCL and/or its agents, servants, and/or employees adequately warned and/or communicated the following to the Plaintiffs: (a) the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) the risk of death or severe injuries; (b) that RCCL does not inspect and/or monitor the Excursion Entity, the subject excursion, the volcanic alert levels and/or the volcanic activity; (c) that RCCL does not verify that the subject excursion is reasonably safe and/or inspected; (d) that the Excursion Entity was not adhering to highest safety standards in the industry; (e) that the Excursion Entity was not

subject to jurisdiction in the United States; (f) that the Excursion Entity carries independent insurance from the cruise line that has lower limits and more limited coverage than RCCL's insurance; and/or (g) the limits of the Excursion Entity's insurance.

57. At all times material hereto, the subject excursion was unreasonably dangerous based on (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

58. At all times material hereto, RCCL knew of the foregoing dangerous conditions causing the Plaintiffs' incident and failed to warn Plaintiffs about them, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them.  This knowledge was or should have been acquired through:

    a.  Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that RCCL was aware of, as alleged in paragraph 31, which did or should have revealed that the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active (like Kilauea) multiple times just a few years before the incident; and/or (2) the risk of death or severe injuries.

    b.  RCCL's initial approval process and/or yearly inspections of the Excursion Entity and/or the subject excursion, including, but not limited to, researching the volcano, having RCCL's representative(s) take the excursion, conducting site inspections, and reviewing the Excursion Entity's insurance, which did or should have revealed: (a) the

dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and (3) the risk of death or severe injuries; (b) that RCCL does not inspect and/or monitor the Excursion Entity, the subject excursion, the volcanic alert levels and/or the volcanic activity; (c) that RCCL does not verify that the subject excursion is reasonably safe and/or inspected; (d) that the Excursion Entity was not adhering to highest safety standards in the industry; (e) that the Excursion Entity was not subject to jurisdiction in the United States; (f) that the Excursion Entity carries independent insurance from the cruise line that has lower limits and more limited coverage than RCCL's insurance; and/or (g) the limits of the Excursion Entity's insurance.

c. RCCL knew the excursion was not being canceled or postponed when the volcanic levels/activity increased because, despite the levels/activities increasing weeks before the incident (as discussed in paragraphs 32-38) and/or throughout their business relationship, RCCL sold tickets and paid the Excursion Entity for tours during that time period.

59. As a direct and proximate result of the negligence of RCCL, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and

Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT IV – GENERAL NEGLIGENCE AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

60. At all times material hereto, it was the duty of RCCL to provide Plaintiffs with reasonable or ordinary care under the circumstances.

61. On or about December 9, 2019, RCCL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiffs with reasonable or ordinary care under the circumstances, based on the following acts and/or omissions:

    a.  Promoting the subject excursion as "thoroughly reviewed" by RCCL, thereby implying that the Excursion Entity and/or its operations were reasonably safe under the circumstances, when in fact they were not; and/or

    b.  Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; and/or

    c.  Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

    d.  Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

e. Failing to cancel or postpone the excursion when the alert levels, volcanic activity and/or risk of eruption increased; and/or

f. Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entity is adhering to such standards.

62. The above acts and/or omissions caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion, as follows:

a. The Plaintiffs would not have purchased tickets for and/or participated in the subject excursion but for RCCL (and/or its agents, servants, and/or employees) falsely implying that the Excursion Entity and/or its operations equipment were reasonably safe under the circumstances by promoting the subject excursion as "thoroughly reviewed" by RCCL.

b. The subject incident would not have occurred but for the failure of RCCL (and/or its agents, servants, and/or employees) to: (1) promulgate and/or enforce adequate policies and/or procedures (a) routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; (b) notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (c) require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased; (2) cancel or postpone the excursion when the alert levels, volcanic activity and/or risk of eruption increased; and/or (3) regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, verify that the Excursion Entity was adhering to such standards, require such standards to be met if/when the Excursion Entity was falling below such standards.

63. At all times material hereto, RCCL knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through:

a. RCCL's initial approval process and/or yearly inspections of the Excursion Entity and/or the excursion, including, but not limited to, having RCCL's representative(s) take the excursion, conducting site inspections, and/or reviewing or enacting the Excursion Entity's policies and procedures, which did or should have revealed: (a) the implications that the Excursion Entity and/or its operations equipment were reasonably safe under the circumstances were false based on (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed; and/or (b) the lack of policies and/or procedures to (1) routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; (2) notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased.

b. Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that RCCL was aware of, as alleged in paragraph 31, which did or should have revealed (a) the implications that the

Excursion Entity and/or its operations equipment were reasonably safe under the circumstances were false based on (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed; and/or (b) the need for adequate policies and/or procedures to (1) routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; (2) notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased.

64. As a direct and proximate result of the negligence of RCCL, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

## COUNT V - NEGLIGENCE AGAINST THE EXCURSION ENTITY

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

65. At all times material hereto, the Excursion Entity owned and/or operated the subject excursion.

66. At all times material hereto, it was the duty of the Excursion Entity to provide Plaintiffs with reasonable care under the circumstances.

67. At all times material hereto, the subject excursion was unreasonably dangerous, operated incompetently, and/or operated by persons improperly trained and/or improperly supervised, based on (1) the subject excursion was in a volcano that was active multiple times just a few years before the incident; (2) the increased volcanic alert levels and/or volcanic activity; (3) the tour guide did not notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the Excursion Entity proceeded with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

68. On or about December 9, 2019, the Excursion Entity and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances, based on the following acts and/or omissions:

a. Failure to provide a safe excursion; and/or

b. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that it was reasonably safe for passengers; and/or

c. Failure to adequately inspect and/or monitor the subject excursion so as to ensure that passengers were being adequately informed and/or warned as to the volcanic alert levels and/or volcanic activity; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

d.   Failure to routinely inspect and/or monitor the volcanic alert levels and/or volcanic activity so as to determine whether it was reasonably safe enough for passengers to proceed with the subject excursion; and/or

e.   Failing to cancel or postpone the excursion when the alert levels, volcanic activity and/or risk of eruption increased; and/or

f.   Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; and/or

g.   Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

h.   Failure to promulgate and/or enforce adequate policies and/or procedures for the Excursion Entity to require that the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased; and/or

i.   Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) of the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) the risk of death or severe injuries; and/or

j.   Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not inspect and/or monitor the Excursion Entity, the subject excursion, the volcanic alert levels, and/or the volcanic activity, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

k.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that RCCL does not verify that the subject excursion is reasonably safe and/or inspected, despite the subject excursion being promoted as "thoroughly reviewed" by RCCL; and/or

l.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity is not adhering to highest safety standards in the industry, as evident by the hazard and/or incompetence involved with the subject excursion; and/or

m.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity is not subject to jurisdiction in the United States, especially when RCCL contractually requires its passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

n.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) that the Excursion Entity carries independent insurance from the cruise line that has lower limits and more limited coverage than RCCL's insurance; and/or

o.  Failure to adequately warn and/or communicate to passengers (including the Plaintiffs) the limits of the Excursion Entity's insurance; and/or

p.  Failure to regularly and/or adequately identify the highest safety standards in the industry for the activities offered in the subject excursion, and verify that the Excursion Entity is adhering to such standards; and/or

q.  Failure to regularly and/or adequately review the safety record of the Excursion Entity before recommending the subject excursion to passengers and the Plaintiffs; and/or

r.  Failure to ensure that properly trained and supervised persons operated the subject excursion; and/or

s.   Having a shore excursion that was not competently operated.

69. The above acts and/or omissions caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion, as follows:

a.   The subject incident would not have occurred but for the failure of the Excursion Entity (and/or its agents, servants, and/or employees) to: (1) provide a safe excursion, operated competently, by properly trained and supervised persons, as listed in paragraph 68(a),(e),(r)-(s); (2) adequately inspect and/or monitor, as listed in paragraph 68(b)-(d); (3) promulgate and/or enforce the policies and procedures listed in paragraph 68(f)-(h); (4) verify that it was adhering to the highest standards review, as listed in paragraph 68(p); and/or (5) review the excursion's safety record, as listed in paragraph 68(q).

b.   The Plaintiffs would not have purchased tickets for and/or participated in the subject excursion had the Excursion Entity (and/or its agents, servants, and/or employees) adequately warned and/or communicated the information listed in paragraph 68(i)-(o).

70. At all times material hereto, the Excursion Entity created and/or knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entity, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through:

a.   The initial approval process and/or yearly inspections of the Excursion Entity and/or the excursion, including, but not limited to, taking the excursion, conducting site inspections, and/or reviewing or enacting the Excursion Entity's policies and procedures, which did or should have revealed the failure to: (1) provide a safe excursion, operated competently, by properly trained and supervised persons, as listed in paragraph 68(a),(e),(r)-(s); (2) adequately inspect and/or monitor, as listed in

paragraph 68(b)-(d); (3) promulgate and/or enforce the policies and procedures listed in paragraph 68(f)-(h); (4) adequately warn and/or communicate the information listed in paragraph 68(i)-(o); (5) verify that it was adhering to the highest standards review, as listed in paragraph 68(p); and/or (6) review the excursion's safety record, as listed in paragraph 68(q).

b. Prior incidents involving passengers injured on the Excursion Entity's excursions that have occurred during RCCL cruises and/or that have been reported within the industry, which would have revealed the failure to: (1) provide a safe excursion, operated competently, by properly trained and supervised persons, as listed in paragraph 68(a),(e),(r)-(s); (2) adequately inspect and/or monitor, as listed in paragraph 68(b)-(d); (3) promulgate and/or enforce the policies and procedures listed in paragraph 68(f)-(h); (4) adequately warn and/or communicate the information listed in paragraph 68(i)-(o); (5) verify that it was adhering to the highest standards review, as listed in paragraph 68(p); and/or (6) review the excursion's safety record, as listed in paragraph 68(q).

71. As a direct and proximate result of the negligence of the Excursion Entity, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT VI – NEGLIGENCE AGAINST DEFENDANTS
## BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

72. At all times material hereto, the Excursion Entity was the apparent agent(s) of RCCL.

73. At all times material hereto, RCCL is estopped to deny that the Excursion Entity was its agent(s) or employee(s).

74. At all times material hereto, RCCL made manifestations which caused the Plaintiffs to believe that the Excursion Entity had authority to act for the benefit of RCCL. These manifestations included:

    a.  RCCL allowed its name to be utilized in connection with the advertising of the Excursion Entity; and/or

    b.  RCCL made all arrangements for the subject excursion without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

    c.  RCCL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

    d.  RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

    e.  Until the point that Plaintiffs actually participated in the subject excursion, the Plaintiffs' exclusive contacts concerning the subject excursion was with RCCL; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

f.   RCCL recommended to Plaintiffs to not engage in excursions, tours or activities that are not sold through RCCL as RCCL has no familiarity with other tours or their operations; and/or

g.   The fee for the excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL; and/or

h.   Plaintiffs received the receipt for the purchase of the subject excursion exclusively from RCCL.

75. Plaintiffs reasonably relied on the above, to their detriment, so as to believe that the Excursion Entity was the employee and/or agent of RCCL in choosing the subject excursion.

76. It was reasonable to believe that the Excursion Entity was RCCL's employee and/or agent because the Plaintiffs booked, paid for and made all necessary arrangements for the subject excursion with RCCL. RCCL's actions caused Plaintiffs to believe that the Excursion Entity had authority to act on RCCL's behalf. At no time did the Excursion Entity represent to the ship's passengers or the Plaintiffs in particular in a meaningful way that the Excursion Entity was not an agent or employee of RCCL.

77. Plaintiffs' reasonable reliance was detrimental because Plaintiffs would not have booked, paid for and/or participated in the subject excursion or incur any injuries had the Plaintiffs known that the subject excursion was not operated by RCCL.

78. The foregoing acts of negligence of RCCL and/or the Excursion Entity was a direct and proximate cause of the Plaintiffs' injuries and damages.

79. As a direct and proximate result of the negligence of the Defendants, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical

expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT VII – NEGLIGENCE AGAINST DEFENDANTS BASED ON JOINT VENTURE BETWEEN RCCL AND THE EXCURSION ENTITY

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

80. At all times material hereto, RCCL and the Excursion Entity engaged in a joint venture to provide excursions to passengers aboard RCCL's ship(s).

81. At all times material hereto, RCCL and the Excursion Entity entered into an agreement where RCCL would sell the subject excursion to its passengers and the Excursion Entity would operate the subject excursion.

82. As its part of the joint venture, RCCL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion, and the money was then shared between RCCL and the Excursion Entity. As its part of the joint venture, the Excursion Entity provided labor and/or operated the subject excursion.

83. RCCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. The fee paid by the passengers, including the Plaintiffs, was split between RCCL and the Excursion Entity, such that RCCL and the Excursion Entity shared a profit of the money made from the shore excursion.

84. At all times material hereto, RCCL and the Excursion Entity had joint and/or shared control over aspects of the joint venture. The Excursion Entity had control over the day-to-day workings

of the excursions. RCCL also had control over the day-to-day workings of the excursions in that they required the Excursion Entity to exercise reasonable care in the operation of the subject excursion. RCCL had control over the arrangements, marketing and sales of the excursion.

85. At all times material hereto, RCCL and the Excursion Entity shared a common purpose: to operate the subject excursion for a profit.

86. At all times material hereto, RCCL and the Excursion Entity had a joint proprietary and/or ownership interest in the subject excursion. RCCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Entity had a proprietary interest in the time and labor expended in operating the subject excursion.

87. At all times material hereto, RCCL and the Excursion Entity shared and/or had the right to share in the profits of the subject excursion, as RCCL retained a portion of the ticket sales for the subject excursion after the tickets were sold, and RCCL paid the Excursion Entity the remaining portion of the ticket sales for the subject excursion.

88. At all times material hereto, RCCL and the Excursion Entity shared and/or had a duty to share any losses that may have been sustained with the subject excursion, including, for instance, when RCCL issued a refund to passengers for the Excursion Entity's excursion(s), including, but not limited to, the subject excursion.

89. RCCL and the Excursion Entity are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

90. At all times material hereto, RCCL and the Excursion Entity therefore:

    a.  Had an intention to create a joint venture;

    b.  Had a joint proprietary interest in the subject matter of the venture;

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

    c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    d.  Had a right to share in the profits of the joint venture; and

    e.  Would share losses which may have been sustained.

91. As joint venturers, RCCL and the Excursion Entity are liable for each other's negligence. As a result, RCCL is liable for the negligent conduct of the Excursion Entity.

92. As a direct and proximate result of the negligence of Defendants, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT VIII – THIRD-PARTY BENEFICIARY

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

93. RCCL and the Excursion Entity entered into a contract to provide the subject excursion for passengers aboard RCCL's ship(s).

94. RCCL and the Excursion Entity intended that the contract primarily and directly benefit RCCL's passengers, including the Plaintiffs.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

95. The intent of RCCL and the Excursion Entity for the contract to benefit RCCL passengers, including the Plaintiffs, was expressed by RCCL and the Excursion Entity.

96. The intent of RCCL and the Excursion Entity for the contract to benefit RCCL passengers, including the Plaintiffs, was demonstrated by the provisions of the contract.  These provisions include, but are not limited to, the following: (a) the purpose of the agreement explicitly stating that it is for the Excursion Entity to provide shore excursions to guests on RCCL's vessels; (b) RCCL having the right to charge its passengers the price that RCCL determines in its sole discretion; (c) RCCL having the sole discretion to provide its passengers a full or partial reimbursement of the excursion ticket if a passenger is dissatisfied; (d) RCCL requiring that the Excursion Entity exercise reasonable care for the passengers' safety at all times; (e) RCCL requiring that the Excursion Entity satisfy and continue to satisfy the highest standards of quality in the industry; and/or (f) RCCL requiring that the Excursion Entity maintain insurance for any and all injuries to passengers.

97. This contract was breached by RCCL and/or the Excursion Entity (and/or their agents, servants, joint venturers and/or employees) by failing to offer a reasonably safe excursion that satisfied the highest standards of quality in the industry (as required under the contract), based on the hazards involved with the subject excursion, including, but not limited to: (a) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (b) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (c) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (d) the unsafe policy of proceeding with the excursion despite increased volcanic alert levels, without adequately notifying passengers of the risk entailed.  The Plaintiffs would not have been injured but for Defendants failing to offer a reasonably safe excursion that satisfied the highest standards of quality in the industry (as required under the contract).

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

98. As a direct and proximate result of the breach(es), the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

### COUNT IX – BREACH OF NON-DELEGABLE DUTY AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-eight (38) as though alleged originally herein.

99. RCCL contractually offered to provide an excursion to Plaintiffs to participate in RCCL's excursion.  The Plaintiffs accepted that contractual offer and provided consideration to RCCL by purchasing the excursion from RCCL.

100.  By promoting, vouching for, contracting for and profiting from the excursion ticket contract, RCCL owed Plaintiffs the non-delegable contractual duty to provide them with a reasonably safe excursion. *See, e.g., Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019); *see also Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016).

101.  RCCL breached its non-delegable contractual and/or tort duty to provide a reasonably safe excursion by committing one or more of the following acts:

a. Failing to select and adequately verify that the Excursion Entity and the subject excursion were safe, reliable and reputable, as evident by how unreasonably dangerous the subject excursion was; and/or

b. Failing to offer a reasonably safe excursion, as evident by how unreasonably dangerous the subject excursion was; and/or

c. Failing to accurately advise Plaintiffs concerning the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

d. Failure to require the Excursion Entity to (1) routinely monitor volcanic alert levels and/or volcanic activity and notify RCCL and/or passengers of such levels/activity; (2) notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) require the excursion be canceled or postponed when the alert levels, volcanic activity and/or risk of eruption increased; and/or

e. Failure to adequately warn and communicate to passengers (including the Plaintiffs) that the Excursion Entity is not subject to jurisdiction in the United States and the law in the United States or Florida, especially when RCCL contractually requires its passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions); and/or

f. Failing to make arrangements with the Excursion Entity that would benefit and protect passengers and Plaintiffs, such as (i) requiring the Excursion Entity to submit to personal jurisdiction in the United States and, specifically, in the same forum that RCCL requires Plaintiffs to file lawsuits for all claims arising from the subject cruise; and/or (ii) requiring the Excursion Entity to agree to the application of specific United

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

States and Florida law for all disputes arising from the subject excursion, including passengers' claims against the Excursion Entity.

102.  As a result of RCCL's contractual and/or tortious breach of its non-delegable duty to provide a safe excursion, the Plaintiffs were injured about Plaintiffs' body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future.   In addition, Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

DATED:  June 25, 2020.

<div style="margin-left:40%">

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:  /s/ *Michael Winkleman*
**JASON R. MARGULIES**
Florida Bar No. 57916
jmargulies@lipcon.com
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
mwinkleman@lipcon.com
**JACQUELINE GARCELL**
Florida Bar No. 104358
jgarcell@lipcon.com

</div>