UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-22627-CIV-MORENO**

LAUREN BARHAM AND MATTHEW UREY,

Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES LTD., ID TOURS NEW ZEALAND LIMITED, AND WHITE ISLAND TOURS LIMITED,

Defendant.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

THIS CAUSE came before the Court upon Defendants' Motions to Dismiss **(D.E. 25, 37, 46)**.

THE COURT has considered the motion, the responses, the replies, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motions are **GRANTED IN PART AND DENIED IN PART.**

The facts are sad. The Plaintiffs were honeymooners on a Royal Caribbean Cruise in New Zealand. Through RCL's advertising, Plaintiffs learned of the opportunity to go on a "shore excursion" to White Island—an active volcano. Because this case is in federal court, you can guess what happens next. The volcano erupted while the Plaintiffs were on the island and they were severely burned (and, in some respects, permanently disabled). 22 people died in the eruption and New Zealand authorities investigated and ultimately charged some of the entities involved.

Plaintiffs now sue RCL, ID Tours, and White Island Tours (they refer to the latter as "Excursion Entities") in a 9-count complaint alleging various theories of negligence and a couple contract claims. Both of the New Zealand-based Excursion Entities move to dismiss for lack of personal jurisdiction while RCL moves to dismiss all counts for failure to state a claim. Ultimately, the two foreign defendants should be dismissed entirely for lack of personal jurisdiction, while some claims against RCL fail to state a claim and some should survive.

**Factual Background**

Plaintiffs are cruise passengers that were severely injured when their shore excursion ended with a volcanic eruption. They first purchased a cruise ticket through Royal Caribbean and then saw RCL's advertising of a day trip to White Island—which is an active volcano and popular tourist attraction. RCL advertised this trip as led by "our destination experts" and touted that they "team up with the top tour operators." On its general shore excursion page, RCL entices customers by promising "they're certified for quality" and that "Royal Caribbean thoroughly reviews its tour operators." These promises become relevant both for negligence analysis and because Plaintiffs argue that the relationship among the Defendants is not one of independent contractor, but rather agent or employee.

Both RCL and the Excursion Entities told passengers White Island is "one of the most active volcanoes in the world," but Plaintiffs allege this did not go nearly far enough toward warning of serious injury and death. Critically, Plaintiffs allege, environmental and geological readings in the weeks and days leading up to the trip revealed that the volcano was more likely than usual to erupt during the excursion, and the Defendants failed to either warn of this fact or cancel the excursion. The nitty-gritty is probably best saved for summary judgment, but suffice to say that less than one week before the excursion, New Zealand's volcano monitoring service set

White Island at a "2" on the 0-5 scale. 2 is the highest level the service can issue where the volcano is not literally mid-eruption. Notably, 2 is the highest level White Island had reached since 2016—the last time it erupted.

**Legal Standard**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937. A court may dismiss a case with prejudice if the

allegations of a complaint, even when taken as true, afford no basis for relief or when amendment would be futile. *E.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020).

**Count I—Negligent Misrepresentation**

First, Plaintiffs charge RCL with negligent misrepresentation. There are six alleged misrepresentations: 1) misrepresenting the activity level so as not to include risk of death, 2) misrepresenting that RCL "thoroughly reviews" excursion partners, 3) misrepresenting that the Excursion Entities were "reputable," 4) misrepresenting that RCL was in charge of the excursion when, in reality, it was an independent contractor, 5) misrepresenting that the Excursion Entities are insured, 6) misrepresenting that Excursion Entities would be subject to personal jurisdiction in the United States. 2 and 3—that RCL vets the reputable excursion entities—are Plaintiffs' strongest arguments.

To prevail on a negligent misrepresentation claim, Plaintiffs must plausibly allege (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation. *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364 (S.D. Fla. 2019), *appeal dismissed*, No. 19-13725-DD, 2019 WL 7167484 (11th Cir. Nov. 25, 2019). Reliance on advertisement must also be "reasonable and justified under the circumstances," *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992), and must show a "causal connection," namely "that the wrong [committed by the defendant] was the proximate cause of [the plaintiff's] injury or damage." *Vance v. Indian Hammock Hunt & Riding Club*, 403 So. 2d 1367 (Fla. 4th DCA 1981). Additionally, as an

allegation of fraud, negligent misrepresentation is subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to establish the "who, what, when, where, and how" of the fraud. *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006).

Defendant RCL counters that Plaintiffs "allege no facts supporting that ID Tours had a bad reputation, was unreliable, or was unsafe, let alone that these purported traits proximately caused Plaintiffs' injuries." Frankly, even though Plaintiffs do not plead that the Excursion Entities had a bad reputation or were unsafe *prior* to this incident, assuming the facts in the Complaint are true, it is plain that taking tourists to the rim of a volcano that was flashing warning signs in the weeks prior to the trip is *per se* evidence of unreliability. *See Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1266 (S.D. Fla. 2020) ("[T]he Court can infer that the zip-lining excursion was not 'easy' as a brief orientation did not prepare Plaintiff for maneuvering an alleged brake failure."). Thus, on this allegation alone, the Court believes the Plaintiffs have plausibly alleged misrepresentation of a material fact and that RCL knew/should have known that the Excursion Entities were not reliable or reputable because RCL knew that the volcanic activity levels were high and the excursion was not cancelled.

RCL maintains, however, that even if these facts were plausibly alleged, its representations are not actionable because they are puffery. Plaintiffs do not respond to the puffery argument in their briefing. Judge Scola dealt with similar facts where a Plaintiff alleged he was injured on an excursion from a Royal Caribbean cruise. Finding the representations were puffery, Judge Scola wrote:

> Lastly, many of the misrepresentations that Zhang points to are not actionable. That is, "the general promise of a 'safe, reliable, licensed, excursion' is not actionable." *Gibson v. NCL (Bahamas) Ltd.*, 11-24343-CIV, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) (Seitz, J.); see also *Hoard v. Carnival Corp.*, 14-23660-CIV, 2015 WL 1954055, at *3 (S.D. Fla. Apr. 17, 2015) (King, J.) (holding the same with respect to statements that an operator was "handpicked," "insured, reliable, and reputable"). Ultimately, a "general promise that the

> trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff." *Young v. Carnival Corp.*, 09-21949-CIV, 2011 WL 465366, at *3 (S.D. Fla. Feb. 4, 2011) (King, J.) (quoting *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir. 1989)). Instead, such language is considered mere puffery and cannot, therefore, support a claim for misrepresentation. See *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1211 (M.D. Fla. 2014) (describing puffery as "generalized, non-verifiable, vaguely optimistic statements" that "are immaterial as a matter of law and therefore inactionable").

*Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223 (S.D. Fla. Nov. 15, 2019). This Court held similarly in a 2006 case, "[a] general promise that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232 (S.D. Fla. 2006).

These facts are slightly different than the standard case involving a general promise of safety followed by unlucky harm. First, here, there was a specific reason that Defendant shouldn't have made these promises. Namely, it was empirically demonstrable that a volcanic eruption was more likely than usual. In *Takata*, this Court held "[a]lthough the marketing of safety features may be construed as 'puffery' when viewed in isolation, such marketing can 'cross the line from mere puffery to active misrepresentations' when statements about safety are read next to allegations that an automotive manufacturer had actual knowledge of the alleged safety defect." The allegations of "actual knowledge" here (if any) are not as strong as in *Takata*, but this claim is best saved for summary judgment.

Second, some of the alleged misrepresentations here are more specific than general promises of safety. For example, Plaintiffs highlight that RCL promised that the Excursion Entities "provides proper equipment and ensures the safety of gear used on active excursions." That promise was broken considering that Plaintiffs were not provided with protective suits that protect from severe burns, for example.

Further, it seems that some Courts faced with similar complaints and puffery defenses deny the motion to dismiss on puffery grounds without much analysis when they find the negligent misrepresentation claims were well-pled. *Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-CV-22006, 2021 WL 2573133 (S.D. Fla. June 23, 2021). Thus, the Court denies the motion to dismiss on Count I.

**Count II—Negligent Selection/Retention**

Negligent selection focuses on what the Defendant knew *pre-hire* while retention focuses on what the Defendant knew *while* the employee/agent/contractor was retained. Under Florida law, the duty element of negligent selection and retention claims requires a plaintiff to plead ultimate facts showing the contractor was hired "to do work which will involve a risk of physical harm unless it is skillfully and carefully done...." *Suarez v. Gonzalez*, 820 So.2d 342, 345 (Fla. 4th DCA 2002) (internal citations omitted). Surely such a duty exists here. To state a claim for negligent hiring or retention against a principal, a plaintiff must prove that (1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury. *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1351 (S.D. Fla. 2016). Plaintiffs' theory of this Count is relatively simply. The Excursion Entities were incompetent based on continued service to a very active volcano[1], their failure to monitor volcanic alert levels, and failure to have competent tour guides. RCL should have known this through an investigation of the companies' volcanic activity monitoring practices or its own volcanic activity monitoring. Finally, RCL's use of the Excursion Entities caused the Plaintiffs' injuries because but for RCL hiring them for the shore excursions, Plaintiffs would not have gone.

[1] Plaintiffs also note the eruption of a tourist volcano in Hawaii. Neither RCL nor the Excursion Entities were involved, but Plaintiffs say this should have alerted Defendants to the danger of touring volcanoes.

RCL argues that the complaint fails to allege sufficient facts about RCL's pre-contracting inquiry into the Excursion Entities. "[T]he relevant inquiry is whether Royal Caribbean diligently inquired into [contractor's] fitness." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1319 (S.D. Fla. 2011) (Jordan, J.). Indeed, Defendant has a point—Plaintiffs do not allege that the inquiry was shoddy or that it revealed damning evidence that Royal Caribbean chose to ignore. But this is not fatal to Plaintiffs' claim because the fact that RCL hired the allegedly-incompetent Excursion Entities despite an inquiry is, in itself, evidence of a cursory investigation. *See Heyden v. Celebrity Cruises, Inc*., No. 12-21923-CIV, 2013 WL 773477 at *4 (S.D. Fla. Feb. 28, 2013) (Moreno, J.) ("And while Hedyen alleges no specific facts that would indicate Celebrity's failure to conduct an adequate pre-selection investigation into the tour operator's background and conduct, it is conceivable that the alleged pattern of misbehavior could have begun prior to Celebrity's selection of this particular contractor."). Thus, because the Court finds Plaintiffs' allegations of the agent/employee/contractor's unfitness and that a thorough investigation would have revealed such unfitness to be plausible, Count II survives the motion to dismiss.

**Counts III and IV—Negligent Failure to Warn and General Negligence**

RCL addresses these two counts in the same section of their motion to dismiss so the Court will treat them together, too. These claims are straightforward. Plaintiffs allege that RCL failed to warn the passengers of the dangers of visiting an increasingly active volcano, failed to warn that RCL was not doing their due diligence on the volcanic activity levels or the practices of the Excursion Entities, and generally breached its duty of care by failing to have proper procedures that would have prevented an accident like this.

Under general maritime law, the applicable standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-

creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). And while a cruise line operator has a duty to warn its passengers of dangers, "this obligation extends only to those dangers which are not apparent and obvious to the passenger." *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1237 (S.D. Fla. 2006).

Royal Caribbean has three retorts: First, it argues Plaintiffs seek to impose a heightened duty of care for, for example, "failing to regularly and/or adequately identify the highest safety standards in the industry." It's true—that allegation probably falls outside the Defendant's duty only to "warn of known dangers in places where passengers are invited or reasonably expected to visit" once the passenger leaves the ship. *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016). However, these Counts have other allegations squarely within the above duty such as "failure to adequately warn and/or communicate to passengers (including the Plaintiffs) of the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (3) the risk of death or severe injuries," thus, this argument will not result in a wholesale dismissal of Counts III and IV.

Second, RCL argues it did not have notice of the risk-creating condition because it could not have known about an "Act of God." Defendants must mount a Herculean effort to shoulder the Act of God burden. "An Act of God is a 'loss happening in spite of all human effort and sagacity.'" *Incardone v. Royal Caribbean Cruises, Ltd.*, 16-20924-CIV, 2020 WL 2950684, at *3 (S.D. Fla. Jan. 18, 2020) (citation omitted). Such a defense is defined as "any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonable to have been expected could have been prevented." *Id.*, at *3 (citing *Cenac*

*Towing Co. v. Southport, LLC*, 232 F. App'x 929, 932 (11th Cir. 2007)). The Act of God defense applies "to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warnings of them." *Incardone*, 2020 WL 2950684, at *3 (citing *Warrior & Gulf Nav. Co. v. United States*, 864 F.2d 1550, 1553 (11th Cir. 1989)). RCL is correct that it nor the Excursion Entities could have predicted the exact time and severity of the White Island eruption and, in that sense, eruptions are Acts of God. But that mischaracterizes the Plaintiffs' argument. Plaintiffs argue that there is some level of volcanic activity level at which it is unacceptably risky to allow passengers to visit the volcano without forewarning and that RCL knew/should have known White Island reached that level. It does not take divine powers to be on actual or constructive notice of that dangerous condition.

Third and finally, RCL argues the risk of visiting an active volcano is open and notorious, thus obviating RCL's duty to warn. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d at 1322-23. "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). Whether a danger is open and obvious is determined from an objective, not subjective, point of view. *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (internal quotation and citation omitted). Eleventh Circuit case law adds important color to this definition. In *Frasca v. NCL (Bahamas), Ltd.*, the Court held that even though a plaintiff may be able to ascertain the danger of an open and obvious condition via her senses, she may not understand the *extent* of the danger. 654 F. App'x 949, 952-53 (11th Cir. 2016). There, the fact that a jury may have credited an expert's testimony and concluded that a deck's visible wetness and weather conditions may not have given away just *how* slippery the deck was gave sufficient reason to deny summary judgment to defendant. The same is true here. While a plethora of federal and

state courts have held that naturally occurring geographic conditions constitute open and obvious dangers, the Court finds it goes too far to find, as a matter of law, that it is implausible that a reasonable person would have been unaware of the danger posed by visiting a recently active volcano that scored a "2" on New Zealand's alert system. To put a finer point on it, the general, abstract risk of a volcano eruption (like slipping on a wet deck) may be open and obvious, but the extent of that risk—that the volcano had erupted several times in recent years and geological warning signs were flashing—may not be. Thus, the Court finds that RCL's defenses fail here and both Counts III and IV are adequately pled.

**Count V—Negligence Against the Excursion Entities**

As described below, these Defendants are dismissed for lack of personal jurisdiction.

**Count VI—Negligence Against Defendants Based on Apparent Agency / Agency by Estoppel**

At the motion to dismiss stage, the fight over this Count turns mainly on what documents the Court is allowed to consider right now. Defendant argues that the Court should look to the explicit language on RCL's website and the Plaintiffs' ticket contract because that language confirms that tour operators are independent contractors for whose conduct RCL cannot be held responsible on a vicarious liability theory. Plaintiffs respond that the Court cannot look to that language because it was not within the four corners of the complaint. Although the Court is generally limited at the motion to dismiss stage to consideration of the Complaint, the Court may consider documents (1) referred to in the Complaint, (2) central to the dispute, (3) whose contents are not disputed, and (4) attached to the Motion. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1397 (S.D. Fla. 2014).

Faced with this exact claim in a shore excursion case, Judge Moore held a shore excursion brochure "would likely be available to the Court for consideration." *Woodley v. Royal Caribbean*

*Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1208. (S.D. Fla. 2020). In that particular case, the brochure was *not* considered because the Defendant only attached a three-page excerpt rather than the whole 83-page document. RCL has apparently learned from its mistakes and now attaches the entire brochure. That brochure states "Shore Excursions are operated by independent third parties. Royal Caribbean Cruises Ltd. has no responsibility for the performance of the Shore Excursions herein specified." RCL's ticket contract with the Plaintiffs is also attached to its motion and reads "The providers, owners and operators of such [shore excursions], conveyances, products and facilities are independent contractors and are not acting as agents or representatives of Carrier." The ticket is mentioned in Plaintiffs' complaint at ¶ 23. However, other Courts in this district have found documents like these not to be central to Plaintiffs' claims when the claims are based in *tort* rather than *contract*. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302 (S.D. Fla. 2019), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019); *see also Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256 (S.D. Fla. 2020) (holding that a website disclaimer that all shore excursions are operated by independent contractors is insufficient to dismiss an apparent agency claim as a matter of law); *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302 (S.D. Fla. 2011) (Altonaga, J.) (holding the ticket contract was not central to the Plaintiff's agency claims). Thus, the Court will not consider the extra-textual documents.

Turning to the substance of the claim, the Eleventh Circuit has "repeatedly observed that apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014). Plaintiffs' agency allegations center on the

intertwined business relationship between RCL and the Excursion Entities, including, but not limited to, cross-marketing and the sale of shore excursions on board RCL ships. As Plaintiffs highlight, "the existence of an agency relationship is a question of fact under the general maritime law." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1235–36 (11th Cir. 2014). Thus, because it is a fact intensive question and the Court cannot consider any of the evidence to the contrary, it appears Plaintiffs do enough to plausibly allege an apparent agency claim. Thus, the motion to dismiss is denied on this point.

**Count VII—Negligence Against Defendants Based on Joint Venture**

To plead negligence based on a joint-venture theory, Plaintiff must allege: (1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained. *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1362–63 (S.D. Fla. 2016).

Again, the Court must decide whether it may take documents like the Tour Operator Agreement, which expressly disclaims a joint venture, into account at this stage. Judge Moore considered the language of the Tour Operator Agreement in one case because the Plaintiffs there referred to the agreement in the complaint and alleged that the joint venture originated from the agreement. *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194 (S.D. Fla. 2020). Although the Plaintiffs do not call it a "Tour Operator Agreement," ¶ 80 of their complaint reads "RCCL and the Excursion Entities entered into an agreement where RCCL would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion." The Court understands "agreement" in this Complaint to mean the Tour Operator Agreement and looks

to it at this stage because it is central to Plaintiffs' claim. Thus the Court agrees with Judge Moore's analysis in *Woodley* and dismisses this Count.

**<u>Count VIII—Third Party Beneficiary</u>**

Plaintiffs allege that they are intended third party beneficiaries of the contract between RCL and the Excursion Entities. Defendant RCL points to the contract between it and the Excursion Entities which reads, in part, "Third Party Beneficiary: Other than as expressly set forth herein, this Agreement shall not be deemed to provide third parties with any remedy, claim, right or action or other right." Plaintiffs, again, say the Court cannot look at that contract yet, and even if it could, one section in light of the *whole* contract does not evince an intent to disclaim third party beneficiaries.

To plead the breach of a third-party beneficiary contract, a plaintiff must allege: "(1) the existence of a contract in which plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach." *Lapidus v. NCL Am. LLC*, 12-21183-CIV, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012) (citations and quotations omitted). "For a contract to intend to benefit a third party, such intent must be specific and must be clearly expressed in the contract." *Steffan v. Carnival Corp.*, 16-25295-CIV, 2017 WL 7796726, at *6 (S.D. Fla. May 22, 2017) (quotations and citations omitted). An "incidental or consequential benefit" is insufficient. *Id.*

Again, although the Court is generally limited to consideration of the Complaint at the motion to dismiss stage, the Court may consider documents (1) referred to in the Complaint, (2) central to the dispute, (3) whose contents are not disputed, and (4) attached to the Motion. Here, the contract is certainly referred to in the complaint and central to the dispute because it is literally

the contract of which the Plaintiffs claims they are third party beneficiaries. The third and fourth factors are met as well. As many others Courts in this District have held, the Court finds it is implausible that the contract intended to make the Plaintiffs third party beneficiaries. *Nichols v. Carnival Corp.*, No. 1:19-CV-20836-UU, 2019 WL 11556754 (S.D. Fla. June 21, 2019) (collecting such cases). Thus, this Count is dismissed.

**Count IX—Breach of Non-Delegable Duty**

This claim appears to center on the fact that RCL contracted with Plaintiffs to provide a reasonably safe excursion and that promise was broken. Note, RCL cites a Chief Judge Altonaga hearing transcript where she questions whether this is even a cause of action. *See* Hr'g. Tr. in *Anderson v. Celebrity Cruises*, Case No. 18-23699, previously filed as [ECF No. 17-4] at 11:25-14:14 ("You state a cause of action – there is no Count I, breach of non-delegable duty. I don't understand it because I don't recognize it as a cause or (*sic*) action . . ..").

The contract Plaintiffs claim they are suing on (mentioned in ¶ 99 of the Complaint) expressly disclaims liability for injury. So, the question becomes: Where, if anywhere, can this alleged promise of safe passage be found in the contract? Plaintiffs allege "by promoting, vouching for, contracting for and profiting from the excursion ticket contract, RCCL owed Plaintiffs the non-delegable contractual duty to provide them with a reasonably safe excursion." But "the rule within this district is clear that breach of contract actions cannot be implied." *Doe v. Celebrity Cruises*, 145 F. Supp. 2d 1337, 1346 (S.D. Fla. 2001). The cases cited by Plaintiff, *Witover* and *Bailey*, are both distinguishable. In both cases, the allegations were that Defendant went above and beyond the standard contract language—either to satisfy the Plaintiff's special needs or through oral representations. *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019); *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016). Because the Plaintiffs do not

plausibly allege that the Defendant owed a contractual duty of safe passage, this Count is dismissed.

**Defendants ID Tours' and White Island Tours' Motions to Dismiss for Lack of Personal Jurisdiction**

The Excursion Entities, ID Tours and White Island, are New Zealand entities that do not have an office or perform their core businesses in Florida. The Plaintiffs' allegations are identical against each Excursion Entity, so the Court treats them together even though they move separately to dismiss.

First, Plaintiffs allege personal jurisdiction under the general jurisdiction provision of the Florida long-arm statute. Under Florida's long-arm statute, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, instrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment" and, therefore, to determine general jurisdiction, "we need only determine whether the district court's exercise of jurisdiction over [ID Tours] would exceed constitutional bounds." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). "A court may assert general jurisdiction over foreign ... corporations ... when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the foreign State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

On several occasions, the Eleventh Circuit has found nearly identical jurisdictional allegations against a foreign tour operator working with a multi-national cruise line based in Florida insufficient to assert general jurisdiction. The same is true here. *Wolf v. Celebrity Cruises,*

*Inc.*, 683 F. App'x 786 (11th Cir. 2017); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

Next, Plaintiffs cite in their complaint Section 48.193(1)(a)(9) of the Florida Statutes to allege that ID Tours/White Island consented to jurisdiction in Florida when it executed the Agreement with Royal Caribbean. *See* Am. Compl. ¶ 9. Section 48.193(1)(a)(9), Florida Statutes, grants parties the right to confer personal jurisdiction by contract, but the contract must comply with sections 685.101 and 685.102 of the Florida Statutes. *See* Fla. Stat. § 48.193(1)(a)(9); *see also Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017) ("[S]ections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met." (alteration added)).

Section 685.102, titled "Jurisdiction", states:

> Any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to [section] 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

Fla. Stat. § 685.102(1) (alteration added). Section 685.101 in turn provides:

> [t]he parties to any contract ... in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value, including a transaction otherwise covered by [section] 671.105(1), may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract, ... the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract ... bears any relation to this state.

Fla. Stat. § 685.101(1) (alterations added).

Chief Judge Altonaga translated these requirements to a succinct list: "[T]o satisfy Florida's statutory requirements, a contract must: (1) include a choice of law provision designating Florida

law as the governing law; (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida; (3) involve consideration of not less than $250,000; (4) not violate the United States Constitution; and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws." *Johnson v. Royal Caribbean Cruises Ltd.*, 474 F. Supp. 3d 1260, 1266 (S.D. Fla. 2020) (cleaned up).

The elephant in the room, of course, is that the contract is between ID Tours/White Island and RCL—not ID Tours/White Island and the Plaintiffs. Plaintiffs' implicit theory is that because ID Tours/White Island signed a contract with RCL and because that contract contained a choice-of-law provision designating Florida law as governing and selected Florida as the place of exclusive jurisdiction even non-signatories can sue the Excursion Entities in Florida courts so long as the lawsuit arises out of or relates to the contract. Again, Courts in this District have considered this exact question and rejected Plaintiffs' argument. *Id.* at 1267 ("Quite simply, the Court agrees with the district court decisions in this Circuit holding that a plaintiff may not use the Agreement's consent to jurisdiction clause via a meritless third-party beneficiary claim to find jurisdiction over a foreign defendant in a personal injury case[,] especially where, as here, the Agreement includes an express disclaimer of the existence of third-party beneficiaries.") (internal citations omitted); *see also Serra-Cruz v. Carnival Corp*., 400 F. Supp. 3d 1354, 1363 (S.D. Fla. 2019); *Kreyer v. Carnival Corp.*, No. 19-cv-20398, Order on Mot. to Dismiss [ECF No. 36] (S.D. Fla. Dec. 19, 2019); *Evesson v. Carnival Corp*., No. 17-cv-23474, Order on Mot. to Dismiss [ECF No. 41] (S.D. Fla. June 20, 2018).

In their response to Defendant Excursion Entities' motions to dismiss, Plaintiffs drop their (1)(a)(9) argument entirely and instead rely on (1)(a)(1) of Section 48.193 which provides for

jurisdiction when if the cause of action arises from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." They say (1)(a)(1) is met because the Defendants were engaged a in a joint venture.

There are two problems. First, this is an entirely new jurisdictional allegation. The Court need not consider these newly asserted allegations/arguments in ruling on the instant Motion to Dismiss. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) ("On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court ordinarily may not look beyond the pleadings."); *Seropian v. Wachovia Bank, N.A.*, Case No. 10-80397-CIV, 2010 WL 2949658, at *4 (S.D. Fla. July 26, 2010) (court refused to consider new claim pled in response to motion to dismiss where the claim was not pled in the original complaint) (citing *Peterson v. Atl. Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her.")). Second, the Court has already dismissed the joint venture claim finding it implausible, above. Thus, there is no way for Plaintiffs to satisfy the Florida long-arm statute and assert jurisdiction over ID Tours or White Island. These Defendants are dismissed.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd of August 2021.

Federico A. Moreno

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record