UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-22627-CIV-MORENO/GOODMAN

LAUREN BARHAM and
MATTHEW UREY,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

### ORDER ON PLAINTIFFS' REQUEST TO COMPEL
### PRODUCTION OF WORK PRODUCT WITNESS STATEMENTS

On August 11, 2022, the Undersigned held an in-person discovery hearing on the parties' multiple discovery disputes, including Plaintiffs' renewed request to compel the production of ten witness statements of current and former RCCL employees. [ECF Nos. 123-24; 139; 151].

Following the hearing, the Undersigned issued a Post-Discovery Hearing Administrative Order  directing the parties to file legal memoranda responding to six questions posed by the Court concerning counsel's obligations (if any) in preparing a client for a fact witness deposition (i.e., a non-Rule 30(b)(6) deposition) and in refreshing that witness's recollection when he or she testifies that she does not recall a fact and a

work product protected document would refresh his or her recollection. [ECF No. 152].[1]

The Undersigned's Order further directed Plaintiffs to "file a list (page and line) specifically quoting the questions and the responses, on a witness-by-witness basis, **where the deponent testified to a lack of recall and that reviewing the witness statement would, could, or might refresh his or her recollection**." *Id.* at 2 (emphasis added).

The Undersigned also issued two Orders requiring Defendant to file under seal the event timelines (also deemed work product) prepared by two of the deponents. [ECF Nos. 171; 185].

Plaintiffs filed deposition excerpts for the ten witnesses [ECF No. 158], the parties filed their post-hearing memoranda [ECF Nos. 159; 166], and Defendant filed under seal the two event timelines [ECF Nos. 175; 186].

Having carefully reviewed the filings, the Undersigned **orders** as follows:

## I.      Overview

From an overarching, 30,000-feet overview, a substantial part of this discovery dispute is, to use the line from Shakespeare, "much ado about nothing." That is because much of the relief Plaintiffs urge is illusory.

---

[1]      The Undersigned also ruled on Plaintiffs' Motion to Compel Defendant, Royal Caribbean Cruises Ltd., to Provide Better Responses to Plaintiffs' Fifth Supplemental Request for Production [ECF No. 123] and Plaintiffs' Motion to Compel Defendant, Royal Caribbean Cruises Ltd., to Provide Better Responses to Plaintiffs' Third Supplemental Request for Admissions and Sixth Supplemental Request for Production [ECF No. 124].

Plaintiffs contend that the ten defense witnesses should have been shown their witness statements or timelines (which Defendant contends are protected by the work product doctrine) before the deposition or during the deposition to refresh their recollections about certain points. But a careful and comprehensive *in camera* examination of all the witness statements and event timelines reveals that the reviews would mostly have been unhelpful -- because most of the witness statements and event timelines do not discuss or even mention the details for which the witnesses asserted a lack of recall.

## II.     Background

### A.     Request for Production No. 23

This is Plaintiffs' third attempt to compel the production of witness statements. On June 10, 2021, Plaintiffs propounded on Defendant Initial Interrogatories, Initial Requests for Admissions, and Initial Requests for Production. [ECF No. 72, ¶ 1]. These discovery requests included Request for Production No. 23, which sought: "[a]ny and all statements given by any witness or any other person who may have knowledge of relevant facts with respect to the subject incident, including, but not limited to, those given at or near the time of the incident by Defendant's employees and/or ship's medical personnel." [ECF No. 77-2, p. 8].

On August 27, 2021, RCCL objected to, among other things, Request for Production No. 23, asserting that these statements "were created, prepared, and/or obtained in anticipation of litigation at the direction of defense counsel, and [were]

protected by the attorney-client and/or work product privileges." *Id.* RCCL also produced two privilege logs. [ECF Nos. 77-3; 83-1].

Notwithstanding RCCL's invocation of the attorney-client privilege in its answer to Request for Production No. 23, Defendant's privilege logs sought to protect the listed items based only on the work product doctrine (and not the attorney-client privilege).

RCCL's initial privilege log is dated September 28, 2021 and consists of 15 items: 13 statements from 12 witnesses[2] and two event timelines.[3] [ECF No. 77-3].

RCCL's amended privilege log is dated October 29, 2021. [ECF No. 83-1]. It is a truncated version of the initial privilege log. It lists four items which had already been listed in the initial privilege log: the statements from Shore Excursion Team Member Yao Chen and Assistant Front Desk Manager Laura Bernard and the two event timelines. [ECF No. 83-1].[4]

---

[2]   Gavin Smith, Vice President and Managing Director of RCL, provided two statements. [ECF No. 77-3 (items 5-6)].

[3]   The event timelines were created by Chief Security Officer Craig Darling and Staff Captain James Nazar. *Id.* (items 14-15).

[4]   RCCL amended its privilege log in order to comport with the Local Rules, which require a privilege log for "all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection **except** . . . written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action." S.D. Fla. L.R. 26.1(e)(2)(C) (emphasis added).

B.       Plaintiffs' Motion to Compel [ECF No. 77]

On October 15, 2021, Plaintiffs filed a motion seeking to compel, among other

things,[5] the 13 witness statements responsive to Request for Production No. 23. [ECF No.

77]. Plaintiffs argued that the 13 statements were "outside the scope of the work product

doctrine because" these types of statements "are routinely prepared as a matter of course

following any incident," were not prepared in anticipation of litigation, did not contain

an attorney's mental impressions, and "likely contain[ed] a recording of objective facts[.]"

*Id.* at 7. Plaintiffs also argued that, at least with respect to the October 22, 2020 statement

provided by Gavin Smith, Defendant had waived the work product doctrine when it gave

a copy of the statement to WorkSafe, a New Zealand government agency. *Id.*

Lastly, Plaintiffs argued that they had a substantial need for the 13 statements

because: (1) they were "unable to obtain the substantial equivalent of the statements

without undue hardship due to the passage of time since the incident" and (2) because

Defendant failed to disclose the location of some of the witnesses, Plaintiffs were

uncertain whether they would be able to subpoena those witnesses for deposition. *Id.* at

7-8.

---

[5]      Although Plaintiffs' motion sought to compel additional discovery, at the time of
Defendant's response, the only remaining discovery dispute concerned the 13 witness
statements being withheld based on the work product doctrine. *See* [ECF No. 83, p. 1 ("As
evident from Royal Caribbean's response, the only remaining discovery dispute pertains
to Plaintiffs' Initial Request for Production No. 23, wherein Plaintiffs request all witness
statements concerning the subject incident.")].

Defendant filed a response in opposition to Plaintiffs' motion to compel. [ECF No. 82]. Defendant argued that the witness statements were obtained in anticipation of litigation, noting that "RCL/RCCL attorneys assisted in the preparation of [the] statements, which in turn were created in preparation and anticipation of litigation and at the direction of counsel." *Id.* at 3. It further asserted that "the subject statements, which were created with the assistance of counsel, contain[ed] the mental impressions and conclusions of RCCL's employees, which subject[ed] these statements to the protection of the work product privilege." *Id.* at 4. In support of its position, Defendant filed a declaration from Amanda Campos, the Director of Guest Claims & Litigation and counsel for RCCL. [ECF No. 82-1].

Defendant also argued that its production of one of Mr. Smith's statements to WorkSafe did not necessarily waive the work product protection. [ECF No. 82, p. 3, n.1. (citing *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. Nov. 6, 2009) ("[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party."))].

Finally, Defendant argued that Plaintiffs had not shown substantial need, noting that "Plaintiffs . . . made no attempts to gather this information via other means" and had made no requests to Defendant to depose RCCL employees. *Id.* at 5-6.

6

In their Reply, Plaintiffs continued to insist that "all thirteen (13) statements should be produced because they were prepared as a matter of course and pursuant to Royal Caribbean's procedures to obtain witness statements following the incident" and "likely contain[ed] only a recitation of objective facts and . . . Royal Caribbean's remedial response, which [were] not protected under the work product doctrine." [ECF No. 83, p. 2]. Plaintiffs also asked, in the alternative, that the Court conduct an *in camera* inspection of the statements to determine if they were in fact work product. *Id.*

United States District Judge Federico A. Moreno referred this matter to the Undersigned [ECF No. 84]. The Undersigned directed RCCL to file under seal all 13 statements and to prepare a chart identifying "on a witness-by-witness basis, (1) the date that the statement was originally taken or provided, (2) the date the statement was signed or acknowledged by the witness, and (3) the circumstances under which the statement was taken[.]" [ECF No. 86].

On December 2, 2021, Defendant filed its chart. [ECF No. 91]. Defendant also filed under seal the 13 statements. [ECF No. 92].

## C.    December 9, 2021 Discovery Hearing

On December 9, 2021, the Undersigned held a Zoom videoconference hearing and issued a Post-Discovery Hearing Administrative Order [ECF No. 96]. This was the first of three Post-Discovery Hearing Administrative Orders addressing these statements. *See* [ECF Nos. 109; 120; 152].

The Undersigned's December 9, 2021 Order denied without prejudice Plaintiffs'
request to compel the witness statements. [ECF No. 96]. Having reviewed the statements
*in camera*, the Undersigned specifically stated in the Order that all thirteen statements
were protected by the work product doctrine, but "reserve[d] ruling on Plaintiffs' attempt
to obtain these work product witness statements under the substantial need exception to
the work product doctrine." *Id.* at 1-2. The Undersigned found "Plaintiffs' request [to be]
premature" and instructed Defendant to provide Plaintiffs with information concerning
the witnesses. *Id.* at 2. The Court also advised Plaintiffs that they could renew their
substantial need argument, if necessary, after they made efforts to contact Defendant's
former employees or to schedule the depositions of Defendant's current employees. *Id.* at
2-3.

### D.      February 24, 2022 Discovery Hearing

On February 24, 2022, the Undersigned held a second Zoom videoconference
hearing concerning the witness statements. At the hearing, Plaintiffs sought to compel
the statements of *former* RCCL employees on the basis of substantial need. Following the
hearing, the Undersigned issued a second Post-Discovery Hearing Administrative Order
on this topic. [ECF No. 109]. The Order directed RCCL to produce the witness statements
of Shore Excursion Team Member Yao Chen, Sales Operation Manager Mark Rheinbay
Anton Alexander, and Regional Manager of RCL Cruises, Ltd. Mark Kinchley. *Id.* The

Undersigned found that with respect to these three witnesses, Plaintiffs had met their burden of showing substantial need. *Id.*

Between June 6, 2022 and July 19, 2022, Plaintiffs took the videoconference depositions of the remaining ten current and former RCCL employees who had provided witness statements.

### E.    August 11, 2022 Discovery Hearing

On August 11, 2022, the Undersigned held a discovery hearing, addressing for the third time Plaintiffs' request to compel the witness statements. Plaintiffs cited two reasons why they were now entitled to the remaining ten work product protected statements.

First, Plaintiffs asserted that they had reason to suspect that RCCL's counsel had instructed the witnesses not to review their statements before their depositions. Plaintiffs cited three reasons for this suspicion: (1) during Gavin Smith's deposition, RCCL's counsel instructed the witness not to answer based on attorney-client privilege, when Plaintiffs' counsel asked Mr. Smith if anyone had instructed him not to read his statement;[6] (2) with the exception of Kwame Konata Matthews, none of the witnesses

---

[6]    During Mr. Smith's deposition, the following exchange took place:

Q. Were you instructed by anyone not to read your 18 to 20-page statement[]?

   [COUNSEL FOR DEFENDANT]: **Let me object to the form and -- and even though -- just out of an abundance of caution, just because you're talking about instructions, and to the extent it included any**

reviewed their statements before their depositions; and (3) RCCL's counsel impeded the witnesses from reviewing their statements *during* their depositions. Plaintiffs argued that if Defendant's counsel gave this pre-deposition instruction, it was improper because it potentially affected each witness's recollection of the incident and of what was contained in his or her statement.

Second, Plaintiffs argued that RCCL's counsel had acted improperly when, during the depositions, he prevented the witnesses from accessing their statements despite testimony from the witnesses that their memory would be refreshed by reading the statements.

According to Plaintiffs, they had now shown substantial need for the statements based on defense counsel's purported instruction to the witnesses not to read their statements before the depositions and counsel's refusal, during the depositions, to allow the witnesses to read their statements.

---

**attorney-client communications, I will instruct Mr. Smith not to answer that question**.

    [COUNSEL FOR PLAINTIFFS]: Okay. We'll certify that question.

    [COUNSEL FOR DEFENDANT]: I don't think you need to certify. It's an old thing.

    [COUNSEL FOR PLAINTIFFS]: It's [sic] sounds fancy to me. Helps me remember when I bring it before the Judge.

[ECF No. 158-4, p. 3 (37:1-16) (emphasis added)].

Plaintiffs also stated that there were "numerous" inconsistencies between RCCL's privilege logs and the testimony of the witnesses, but provided only one concrete example. The privilege log listed one of Gavin Smith's statements as being three pages, when in fact it was 18 pages. According to the excerpt of Mr. Smith's deposition, however, RCCL's counsel notified Plaintiffs' counsel of this error the day before Mr. Smith's deposition. [ECF No. 158-4, pp. 8-9 (57:23-58:3 ("I haven't looked at that document in forever and just yesterday I stumbled upon it and I compared the two documents and I realized it had the typo and called [Plaintiffs' counsel]. So it wasn't three. It was 18 pages."))].

RCCL's counsel represented to the Court, during the hearing, that he did not give any instruction to the witnesses. He did not feel obligated to affirmatively tell the witnesses to read their statements (which is different from specifically telling the witnesses *not* to read their statements) largely because he knew that the statements would not contain any information that was relevant to the remaining issues in the case, there were no topics designated in the deposition notices, and these were not *duces tecum* depositions. Defense counsel stated that when he met with the witnesses to prepare them, it was his impression that they had a very good memory of everything the witnesses had done.

Plaintiffs argued that an attorney should not impede a deposition by instructing the witness not to read his or her statement in preparation for that deposition in order to

prevent Federal Rule of Evidence 612 from being triggered. According to Plaintiffs, once the witness testified during his or her deposition that a statement would refresh his or her recollection, Rule 612 *automatically* required that the witness be given the statement in order to establish whether or not the witness's memory was in fact refreshed by reviewing the statement.

Plaintiffs noted that the entire purpose of taking these depositions was for Plaintiffs to obtain the substantial equivalent of the witness's statements -- i.e., their recollections at the time they made their statements. And, if Defendant's counsel was impeding that process by preventing Plaintiffs from obtaining the substantial equivalent of the statements, then Plaintiffs argued, they had shown a substantial need for the statements.

## III.   Applicable Law

### A.   Work Product Doctrine

"The United States Supreme Court first recognized that an attorney's 'written statements, private memoranda and personal recollections' should be afforded qualified immunity from discovery in *Hickman v. Taylor*, 329 U.S. 495 (1947), noting that '[i]n performing . . . various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *In re Seroquel Prod. Liab. Litig.*, No. 6:06MD1769 ORL22DAB, 2008 WL 591929, at *2 (M.D. Fla. Feb. 28, 2008) (quoting *Hickman*, 329 U.S. at 510).

The work product doctrine protects the materials of both plaintiffs and defendants. The doctrine applies equally to documents withheld by either type of party, in open or closed matters. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 619 (S.D. Fla. 2013). The Supreme Court has articulated that the purpose of work product protection is to immunize the work product of the attorney or his agents from discovery, so that they can analyze and prepare their client's case for litigation. *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975); *see also Upjohn Co. v. United States*, 449 U.S. 383, 397-98 (1981); *Hickman*, 329 U.S. at 509-10. "[It] is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999).

"The work product protections are codified in Federal Rule of Civil Procedure 26(b)(3)." *EFN W. Palm Motor Sales, LLC v. Hyundai Motor Am.*, No. 21-CV-80348, 2022 WL 2116547, at *1 (S.D. Fla. June 13, 2022). Work product includes: (1) any document or tangible thing that is (2) prepared in anticipation of litigation (3) by or for a party, or by or for that party or its representative. *See* Fed. R. Civ. P. 26(b)(3)(A).

Rule 26(b)(3) differentiates between fact work product and opinion work product. "Factual work product may be subject to discovery upon the showing of a 'substantial need' and the inability to obtain substantially equivalent evidence by other means without undue hardship. *Hoover v. NCL (BAHAMAS) Ltd.*, No. 19-22906-CIV, 2020 WL

4505634, at *12 (S.D. Fla. Aug. 5, 2020) (citing *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1229 (S.D. Fla. 2018)).[7]

Opinion work product, on the other hand, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994); *see also Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334–35 (11th Cir. 2018) ("Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." (citing Fed. R Civ. P. 26(b)(3)(A); *Cox*, 17 F.3d at 1421–22)).

The party seeking to invoke the work product doctrine has the burden of establishing its applicability. *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 649 (S.D. Fla. 2009). "Once that burden is met, the burden then shifts to the requesting party to show a 'substantial need' and 'undue hardship' in accordance with Fed. R. Civ. P. 26(b)(3)(A)(ii)." *Luc v. Korean Air Lines Co.*, No. 1:18-CV-5900-LMM, 2019 WL 7824693,

---

[7]    In assessing substantial need, courts consider multiple factors, including:

> (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks.

*Hoover*, 2020 WL 4505634, at *12 (quoting *Burrow*, 334 F. Supp. 3d at 1230 (citing Fed. R. Civ. P. 26 advisory committee's note to 1970 amendment)).

at *1 (N.D. Ga. May 31, 2019). "[W]here the Court has had the benefit of reviewing the documents in question *in camera*, it is better positioned to assess a moving party's showing of substantial need than even the moving party." *TIG Ins. Co. v. United Nat'l Ins. Co.*, No. 05-60672-CIV, 2006 WL 8431479, at *8 (S.D. Fla. June 23, 2006).

### B.      Federal Rule of Evidence 612

Federal Rule of Evidence 612 "governs the process for producing writings used to refresh memory." *Rando v. Gov't Emps. Ins. Co.*, No. 5:06-CV-336-OC-10GRJ, 2008 WL 11434557, at *1 (M.D. Fla. Jan. 4, 2008). It states, in part, as follows:

> **(a) Scope.** This rule gives an adverse party certain options when a witness uses a writing to refresh memory:
>
> > (1) while testifying; or
> >
> > (2) before testifying, if the court decides that justice requires the party to have those options.
>
> **(b) Adverse Party's Options; Deleting Unrelated Matter**. Unless 18 U.S.C. § 3500 provides otherwise in a criminal case, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record.

Fed. R. Evid. 612(a)-(b).

"Rule 612 is not a vehicle for a plenary search for contradictory or rebutting evidence that may be in a file but rather is a means to reawaken recollection of the witness to the witness's past perception about a writing." *United States v. Sheffield*, 55 F.3d 341, 343

(8th Cir. 1995). "Rule 612 exists, in part, to 'safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness." *Edwards v. Speedway, LLC*, No. 18-23091-CIV, 2019 WL 13066871, at *1 (S.D. Fla. May 15, 2019) (citing Fed. R. Evid. 612 advisory committee's notes).

Under Rule 612, "an adverse party is entitled to the production of a document if a witness uses the document to refresh his or her memory (1) while testifying or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice." *Id.* (citing Fed. R. Evid. 612). The rule applies to both deposition testimony and trial testimony. *Id.* ("Courts have routinely applied this rule to documents reviewed in preparation for depositions as well as for trial testimony preparation.").

Although Rule 612 permits the opposing party to obtain a document used by a witness to refresh his or her recollection, "nothing in the Rule [should] be construed as barring the assertion of a privilege[.]" Fed. R. Evid. 612 advisory committee's note.

Thus, a litigant has the right to object to the production of a document and seek a court ruling on whether the interests of justice are met. *Cf. Ross v. Sejin Am., Inc.*, No. 3:18-CV-537-RAH-JTA, 2021 WL 6973877, at *3 (M.D. Ala. Apr. 9, 2021) ("By failing to object to production, as was her right under Federal Rule of Evidence 612, [the] [p]laintiff . . . forfeited the option of asking the court to determine whether the interests of justice

required the disclosure of her notes under Rule 612(a)." (citing *Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985)).[8]

"Even if the document consulted is privileged, the Court has discretionary power to determine whether a waiver has occurred." *CMS Wireless, LLC v. Fid. & Deposit Co. of*

---

[8]    *Sporck* is often cited for the view that the collection of documents used by counsel to prepare the witnesses for depositions is privileged and protected from disclosure by the work product doctrine, but it appears as though the Eleventh Circuit has yet to adopt or endorse that approach. *In re Seroquel Product Liability Litigation*, No. 6:06-md-1769, 2008 WL 215707, at *3 (M.D. Fla. Jan. 24, 2008) (noting that other Florida district courts acknowledged *Sporck's* "far-reaching effect" and distinguished the facts before them from the *Sporck* decision); *Loc. Access, LLC v. Peerless Network, Inc.*, No. 617CV236ORL40TBS, 2018 WL 2938393, at *5 (M.D. Fla. June 12, 2018) ("'The Eleventh Circuit has not had opportunity as yet to consider the applicability of the *Sporck* doctrine. The cases within this Circuit that have had such opportunity, however, have recognized the far-reaching effects of the decision, and have crafted a narrower application of the doctrine.'" (quoting *In re Trasylol Prod. Liab. Litig.*, No. 08–MD–1928, 2009 WL 936597, at *4 (S.D. Fla. Apr. 7, 2009)); *Avant Garde Eng'g & Res. Ltd. v. Nationwide Equip. Co.*, No. 3:11-CV-525-J-20TEM, 2013 WL 2106817, at *8 (M.D. Fla. May 15, 2013) ("While counsel is correct that the Eleventh Circuit has not yet analyzed the issue of whether the selection and ordering of documents to show a witness is protected work product, [the] [d]efendants' reliance on a Third Circuit case is misplaced as district courts within the Eleventh Circuit have had occasion to analyze this issue. The district courts have been reluctant to expand the attorney work product doctrine, noting 'that an overly broad application of work-product immunity could easily eviscerate the discovery rules and their purpose.'" (quoting *Jackson v. Geometrica, Inc.*, No. 304CV640J20HTS, 2006 WL 510059 (M.D. Fla. Mar. 2, 2006))); *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 204173, at *2 (S.D. Fla. Jan. 24, 2012) ("This Court agrees with the *Trasylol* Court and the other courts that require the party raising a 'selection based opinion work product' objection to 'come forward with some evidence that disclosure of the requested documents creates a real, non-speculative danger of revealing counsel's thoughts.'" (quoting *In re Trasylol*, 2009 WL 936597, at *4)).

By citing cases which also cite *Sporck*, the Undersigned is not adopting *Sporck's* so-called rule that the collection of documents is itself a privileged step which immunizes a fact witness from disclosing what he or she reviewed to prepare for testimony.

*Md.*, No. 4:11CV00755 RTD, 2013 WL 12286172, at *4 (E.D. Ark. Mar. 11, 2013) (citing Fed. R. Evid. 612; McCormick on Evid. § 93 (6th ed.)); *see also Valvoline Instant Oil Change Franchising v. RFG Oil, Inc.*, No. 12CV2079-GPC(KSC), 2014 WL 12026073, at *5 (S.D. Cal. May 20, 2014) (acknowledging that "[p]ursuant to Rule 612(a)(2), 'justice' may sometimes 'require the production of a document as to which the privilege has not been waived in order to permit adequate cross-examination'" (quoting *In re Rivastigmine Patent Lit. (MDL No. 1661)*, 486 F. Supp. 2d 241, 243 (S.D.N.Y. 2007)).

The rule treats documents used *before* testifying and documents used *while* testifying differently. "The amendment to Rule 612 reflects Congress' intent to treat the two situations differently." *Balbiani v. Chester Pub. Util. Dist., Inc.*, No. 2:20-CV-2310-TLN-DMC, 2022 WL 3594385, at *8 (E.D. Cal. Aug. 23, 2022); *Suss v. MSX Int'l Eng'g Servs., Inc.*, 212 F.R.D. 159, 163 (S.D.N.Y. 2002) (noting that while "courts have been grappling with the scope of Rule 612 with varying degrees of clarity[,]" "[t]he one area of agreement appears to be that the standard for production varies between Rule 612(1) and 612(2)").

"Whether to order production of materials referred to *before* testifying is within the Court's discretion after balancing the need for the material against the author's need to protect confidential information." *Balbiani*, 2022 WL 3594385, at *8 (citing *Derderian v. Polaroid Corp.*, 121 F.R.D. 13 (D. Mass. 1988)); *see also Edwards*, 2019 WL 13066871, at *1 ("The production of a writing used to refresh a witness's recollection *prior to testifying* is left to the discretion of the district court in the interests of justice." (emphasis added));

*Ferry v. BJ's Wholesale Club*, No. CIV.3:06CV226-C, 2007 WL 75375, at *3, n.1 (W.D.N.C. Jan. 8, 2007) ("As is clear from the rule, when a document is used to refresh a deponent's memory *prior* to the deposition, a balancing test must be applied." (citing Fed. R. Evid. 612(2) (emphasis in original))).

Conversely, documents used by a witness *during* his or her testimony *must* generally be produced. *See Suss*, 212 F.R.D. at 163 ("[I]f the witness uses the document while testifying, it must be produced.").

In exercising their discretion, some courts:

> have found that three conditions must be met before a party may obtain documents used by a witness prior to testifying: (1) the witness uses the writing to refresh his memory; (2) the witness uses the writing for the purpose of testifying; and (3) the court determines that production is necessary in the interest of justice.

*Ross*, 2021 WL 6973877, at *1 (citing *Sporck*, 759 F.2d at 317 and *In re Managed Care Litigation*, 415 F. Supp. 2d 1378, 1380 (S.D. Fla. 2006) (Moreno, J.)). Of course, other courts have employed other factors. *See Suss*, 212 F.R.D. at 163 (observing that "the cases [applying Rule 612] do not provide a uniform analytical framework").

Finally, the burden is on the party seeking to compel production to show the applicability of Rule 612. *See Napolitano v. Omaha Airport Auth.*, No. 8:08CV299, 2009 WL 1740826, at *3 (D. Neb. June 15, 2009) ("[T]he burden is on the party requesting production to show 'that the document actually influenced the witness's testimony.'" (quoting *Sporck*, 759 F.2d at 318)); *Lubritz v. AIG Claims, Inc.*, No. 217CV02310APGNJK, 2018 WL

10456239, at *2 (D. Nev. Apr. 18, 2018) ("The party seeking disclosure bears the burden of showing that disclosure is warranted.").

## IV.   Analysis

### A.   Counsel's Duty to Prepare a Client for a Fact Witness (i.e., a Non-Rule 30(b)(6)) Deposition)

At the heart of this dispute is the extent to which counsel must prepare a fact witness for deposition. Plaintiffs assert that "an attorney has an *ethical* duty to competently prepare their client-witness for testimony." [ECF No. 159, p. 2 (emphasis in original)]. RCCL states that "any duty to prepare a non-30(b)(6) witness—let alone prepare in a particular manner—that a lawyer may have stems from rules governing professional conduct, not legal mandates." [ECF No. 166, p. 1].

The Rules Regulating the Florida Bar state that "[a] lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Fla. R. Reg. Fla. Bar 4-1.1.[9]

"[A] deposition is a major event in the life of a case." *Evans v. Griffin*, 932 F.3d 1043, 1048 (7th Cir. 2019). As one court observed:

> Depositions serve multiple purposes. Depositions allow a party to find out what a witness saw, heard, did, or thinks. *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993). Depositions frequently

---

[9]   "The Rules Regulating the Florida Bar govern the professional conduct of attorneys in the Southern District of Florida." *Vital Pharms., Inc. v. Alfieri*, No. 20-61307-CIV, 2022 WL 456403, at *2 (S.D. Fla. Feb. 11, 2022) (citing S.D. Fla. Local Rule 11.1(C)).

allow parties to discover key facts and ascertain which deponents will prove to be suitable or desirable witnesses at trial. Depositions also can elicit information that may lead to other useful evidence. *Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007). Furthermore, depositions allow a party to "lock" a deponent into key admissions and secure the deponent's "final" version of the relevant events. Once a deponent's testimony is secured in a deposition transcript or recording, it becomes difficult for the deponent to alter his testimony materially. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306-07 (11th Cir. 2016) (holding that a court may "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts" a deponent's "prior deposition testimony for the transparent purpose of creating a genuine issue of fact").

The information obtained through pretrial depositions can assist parties in moving for summary judgment or defending against a summary judgment motion. *See* Fed. R. Civ. P. 56. Depositions also help parties determine whether settlement is appropriate or whether the relevant deponents will suffice to establish or disprove elements of claims or defenses. *See Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009). Indeed, in civil actions, depositions are "the factual battleground where the vast majority of litigation actually takes place." *Hall*, 150 F.R.D. at 531.

*Mitnor Corp. v. Club Condo.*, 339 F.R.D. 312, 315-16 (N.D. Fla. 2021).

Given the significant role played by depositions in civil cases, lawyers are expected to prepare their clients for this often-consequential event. *In re Seroquel Prod. Liab. Litig.*, No. 606MD-1769ORL-22DAB, 2008 WL 215707, at *5 (M.D. Fla. Jan. 24, 2008), aff'd, No. 6:06MD1769 ORL22DAB, 2008 WL 591929 (M.D. Fla. Feb. 28, 2008) (observing that "[e]very responsible attorney prepares with her client-witness before that witness testifies"); *Hall*, 150 F.R.D. at 528 ("A lawyer, of course, has the right, if not the duty, to prepare a client for a deposition."(citing Pa. R. Prof. Conduct 1.1.) (footnote omitted)).

**How** that lawyer prepares the client-witness, however, will likely turn on the type of deposition noticed.

Fact witness depositions are different from Rule 30(b)(6) depositions. *See Christie v. Royal Caribbean Cruises, Ltd.*, No. 20-22439, 2021 WL 2940251, at *4 (S.D. Fla. July 13, 2021) ("[A] deposition pursuant to Rule 30(b)(6) is materially different than a witness deposition as an individual."); *Castle-Foster v. Cintas Corp. No. 2*, No. CV419-139, 2021 WL 601877, at *9 (S.D. Ga. Feb. 16, 2021) ("[T]he Court will not approve [the] defendants' plan to retroactively designate fact witnesses for 30(b)(6) purposes . . . . Attorneys do not treat these deponents similarly, nor should they be expected to.").

In the context of a Rule 30(b)(6) deposition, the designee will know ahead of time the topics that will be discussed at her deposition and the party noticing the corporate deposition will not necessarily know the identity (or identities) of the designee(s) until the day of the deposition.

On the other hand, the name of a fact witness is typically (although not always) listed in the notice, but the subjects to be discussed at the deposition do not need to be previewed in advance. Fed. R. Civ. P. 30(b)(1).

Another important distinction is that a fact witness is expected to testify based on his or her personal knowledge. *See McGonegle v. Select Comfort Retail Corp.*, No. 1:19-CV-442, 2022 WL 394381, at *2 (S.D. Ohio Feb. 9, 2022) ("The testimony of a fact witness must have a basis in the witness's personal knowledge." (citing Fed. R. Evid. 602)); *United States*

*v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013) ("[P]ersonal knowledge [is] a foundational requirement for fact witness testimony and is premised on the common law belief that 'a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact.'" (quoting Fed. R. Evid. 602 advisory committee's note)).

"[A]s contrasted with Rule 30(b)(6) witnesses, fact witnesses are under no duty to educate themselves about all information available to the corporation on a particular topic." *In re E.I. du Pont de Nemours & Co.*, No. 2:13-MD-2433, 2014 WL 1653158, at *4 (S.D. Ohio Apr. 24, 2014).

In contrast, "corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015). His or her answers will bind the corporation or entity. *See Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 4990902, at *2 (S.D. Fla. Aug. 20, 2021) ("The deposition testimony of a Rule 30(b)(6) corporate representative is binding on the corporation and the corporate representative."). In instances "where a [Rule 30(b)(6)] corporate designee testifies on topics of which he denies any personal knowledge, he is an 'empty vessel' and documents reviewed on those topics in

preparation for the deposition necessarily informed his testimony." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 243 (D. Md. 2010).

Given the differences between fact witness depositions and Rule 30(b)(6) depositions, the Court would expect that counsel's obligations vis-à-vis his client-witness will depend on the type of deposition being noticed. Much has been written in the case law and in secondary sources about the art of preparing a Rule 30(b)(6) corporate designee. The legal authority is less abundant when it comes to the topic of preparing a fact witness for deposition.

The parties seem to agree that, at the very least, a lawyer has an ethical obligation to prepare a client to testify. In the Undersigned's view, the specifics of *how* the attorney discharges that ethical obligation in preparing the client for a fact-witness deposition is up to the attorney's discretion.

Plaintiffs argue that RCCL's counsel had an obligation to not impede the witnesses from reviewing their statements and once those witnesses testified during their depositions that their statements would or could refresh their recollection, RCCL's counsel had an affirmative obligation to provide those statements to those witnesses. And, if the witnesses' recollections were refreshed upon reading their statements, then RCCL's counsel was required under Rule 612 to produce the statements to Plaintiffs, notwithstanding the Court's earlier determination that these statements were subject to work product protection.

24

Plaintiffs have not cited any binding authority requiring an attorney to specifically review a fact witness client's statement before a fact witness deposition taken by opposing counsel (or during the actual deposition).

To be sure, Rule 612 does state that if "a witness uses a writing to refresh memory" either while testifying or "before testifying" upon an interest of justice finding by the court then "an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Fed. R. Evid. 612. However, that is not the same as *requiring* counsel to prepare a witness using a specific document (such as a work product protected statement).

As noted above, the burden is on the party seeking production of a document pursuant to Rule 612 to show the rule's applicability. Here, Plaintiffs have not met that burden.

By its very terms, Rule 612 is largely inapplicable here because (with the exception of Mr. Matthews), the witnesses did not review their statements before their depositions. Moreover, none of the witnesses were shown their statements during their depositions.

Nonetheless, materials which have previously been deemed work product may be discoverable if the party seeking production establishes substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Absent a showing of substantial need and undue hardship, however, Plaintiffs are not entitled to RCCL's work product.

**B.     Use of Work Product Protected Materials in Preparing a Witness for Deposition or During a Deposition May Result in Waiver**

The deposition excerpts filed by Plaintiffs show that RCCL's counsel was hesitant to allow the witnesses to view their statements during their depositions -- absent a stipulation by the parties -- because he was concerned about waiving the documents' work product protections. Defense counsel's concerns were well-founded.

It is beyond dispute that "the work product doctrine provides only a qualified and limited degree of immunity from discovery[.]" *Neonode Smartphone LLC v. Apple, Inc.*, No. 21CV08872EMCRMI, 2022 WL 1285429, at *2 (N.D. Cal. Apr. 29, 2022). Under the right conditions (or the wrong conditions, depending on which side counsel is on), it is subject to waiver. *See Chick-fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *3 (S.D. Fla. Nov. 10, 2009) ("[T]he Court finds that Exxon counsel's intentional, voluntary disclosure to Chick-fil-A of attorney Quiralte's Memorandum waived Exxon's work product protection."); *Ross*, 2021 WL 6973877, at *3 ("The absence of a clear objection on the record and [the] [p]laintiff's active participation in the disclosure compel the court to find her actions were intentional and voluntary, and consequently waived any work product privilege she may have claimed." (citing *Chick-fil-A*, 2009 WL 3763032, at *3)).

Thus, given the legions of cases illustrating the pitfalls of voluntarily producing work product protected documents, RCCL's counsel sensibly chose not to show the work product protected statements to the witnesses *during* their depositions (and, in Daragh Robbins' case, instructed him not to get his statement which was somewhere in his

house), because doing so risked waiving the statements' work product protections. *See Jolly v. Coughlin*, No. 92 CIV. 9026 (JGK), 1995 WL 495641, at *2 (S.D.N.Y. Aug. 21, 1995) ("The fact that the document used to refresh a witness's recollection while testifying would otherwise be privileged, does not shield it from being produced under [Fed R. Evid.] 612(1).").

And, RCCL's counsel understandably chose not to use the statements to *prepare* his witnesses for deposition because doing so could also result in waiver. *See United States ex rel. Bingham v. HCA, Inc.*, No. 13-23671-CIV, 2016 WL 4543871, at *1 (S.D. Fla. Apr. 18, 2016) (Torres, M.J.) ("[B]ased on settled principl[es] applied in our District, . . . the **use of the Relator of that same document to prepare for his deposition answers effectively waived any work product protection in the document**, except for pure opinion work product that, if disclosed, would substantially prejudice the Relator in the litigation." (emphasis added)); *Mitchell v. Royal Caribbean Cruises, Ltd.*, No. 12-CV-22734-UU, 2013 WL 12064484, at *1 (S.D. Fla. May 2, 2013) (Torres, M.J.) (requiring cruise line to produce "Confidential Vessel Report/Personal Injury Illness Statement" pursuant to Fed. R. Evid. 612 -- "[e]ven assuming that the report would qualify as work product" -- where witness testified at his deposition that he recalled certain facts because he had reviewed his notes regarding the incident).

As Judge Torres warned in *HCA, Inc.*,

> it is clear that factual work product contained in [a] document is discoverable because any work product protection [is] lost when the

> witness specifically relie[s] on the document in preparation for his deposition. The decision to review the document is also purposeful and understandable. But it has consequences under Rule 612, based upon the unfairness to the adverse litigant in not being able to cross-examine the witness on this document.

2016 WL 4543871, at *2.

Instead, RCCL's counsel chose to litigate the issue before the Court, as was his right. *See Gutherless v. Union Pac. R.R. Co.*, No. 8:20CV442, 2021 WL 5771285, at *3 (D. Neb. Dec. 6, 2021) ("[A] party seeking to preserve work product protection over writing used to refresh recollection may seek relief from the court before disclosing the protected materials."); *Ross*, 2021 WL 6973877, at *3 (observing that a litigant has "the option of asking the court to determine whether the interests of justice required the disclosure of her notes under Rule 612(a)").

## C.   Fact Witness Depositions[10]

As noted above, the Undersigned directed Plaintiffs to "file a list (page and line) specifically quoting the questions and the responses, on a witness-by-witness basis, where the deponent testified to a lack of recall and that reviewing the witness statement would, could, or might refresh his or her recollection." [ECF No. 152, p. 2]. Plaintiffs filed deposition excerpts for all ten witnesses. [ECF No. 158].

---

[10]   Unless otherwise noted, the information summarized in this section is from the deposition excerpts filed by Plaintiffs. [ECF No. 158]. Although the Undersigned reviewed *in camera* the filed-under-seal witness statements and event timelines [ECF Nos. 92, 175; 186], none of the information contained in this Order (or the attachment) discloses the *substance* of those sealed filings.

The Undersigned will now address, on a witness-by-witness basis, each instance in which the witness testified that he or she could not recall or could not remember a fact, as well as other testimony relevant to the Undersigned's ruling. For those witnesses whose depositions will be resumed, the Undersigned will also include an attachment, in chart form, listing those instances where the witness testified that he or she did not remember or did not recall a fact and identifying by paragraph number where the information may be found in the witness's statement.

### 1.    Kwame Konata Matthews, Front Desk Manager

Kwame Konata Matthews provided a six-page statement taken on January 12, 2020. [ECF No. 77-4, item 9].

Of the ten witnesses, Mr. Matthews was the only deponent who testified that he reviewed his witness statement before his deposition. Mr. Matthews testified that he reviewed his statement approximately three months before his deposition, when RCCL's counsel reached out to him about Plaintiffs' desire to take his deposition. [ECF No. 158-1, p. 2 (13:7-25)]).

Mr. Matthews read his statement because the incident "was in 2019 and so much happened during that time." *Id.* at 13:13-14. He believed he would not work for Royal Caribbean again, due to the pandemic, and he had "wiped the whole situation out of [his] mind and when it was brought to [his] attention, [he] just read through [the statement] to remember, briefly." *Id.* at 13:13-18.

Although Mr. Matthews denied that he reviewed his statement in preparation for his deposition, he did state that he reviewed it so he could refresh his recollection. *Id.* at 14:7-10. He explained that there were "so many names . . . and it was so long ago, that [he] just wanted to refresh [his] memory." *Id.* at 14:15-19. When asked why he wanted to refresh his recollection, Mr. Matthews stated that it was "[s]o that when . . . [he was] asked any questions, that [he] [would] be able to tell very accurately [the] answer" because "[t]he incident that happened, . . . was three years ago." *Id.* at 14:20-24. Nonetheless, he testified that he "didn't read through [the statement], [he] just brushed through it very briefly[.]" *Id.* at 14:25-15:5. "[He] could not remember all the names, so [he] had to refresh [his] memory." *Id.* at 15:13-14.

During the deposition, Plaintiffs' counsel asked RCCL's counsel for a copy of Mr. Matthews' statement, citing Fed. R. Evid. 612, because Mr. Matthews had testified that he had read his statement in preparation for his deposition. *Id.* at 16:12-17. RCCL's counsel refused, arguing that, under Rule 612, it was up to the Court to decide whether Plaintiffs were entitled to the statement and asserting that Mr. Matthews' review of the statement "[did] not qualify [as] a waiver of the work product doctrine." *Id.* at 16:18-25. RCCL's counsel proposed giving the statement to Mr. Matthews so that he could refer to it, "to remember maybe names of people," **provided** that the parties stipulated that doing so

would not waive the work product doctrine. *Id.* at 19:25-20:6. Plaintiffs' counsel refused. *Id.* at 20:7-16.[11]

During his deposition, Mr. Matthews could not recall the names of some of the Ooi[12] family members who were in the ship's conference room following the eruption of the volcano. *Id.* at 30:22-31:2. He believed these names would be in his statement. *Id.* at 31:3-17. RCCL's counsel again offered to provide these names, "subject to not waiving the work product protection." *Id.* at 31:19-22.

Mr. Matthews was also not able to recall the names of all of his team members who were in the conference room, other than Lee, Nicole Consumate, Jennifer Stork, and Laura Bernard. *Id.* at 33:10-34:3. He believed this information would be in his statement. *Id.* at 34:4-7.

Mr. Matthews testified that he called approximately seven or eight passengers who were on the excursion. *Id.* at 34:8-16. He listed several names, but when asked if there was anyone else that he could remember, he stated that "[t]hose were the guests that we called . . . that was what I can recall." *Id.* at 35:4-7.

---

[11]     If Plaintiffs' counsel had genuinely been interested in obtaining the deponent's refreshed recollection, then counsel presumably would have agreed to this proposed stipulation. The refusal suggests that Plaintiffs were more interested in pursuing a strategy to obtain the work product statements themselves rather than the few facts which the deponent did not recall.

[12]     The Ooi surname is sometimes misspelled in the deposition transcripts as "Oii." In this Order, the Undersigned will use the correct spelling.

Finally, Mr. Matthews could not recall the surname of a passenger named Jason and testified that Jason's last name would be in his statement. *Id.* at 39: 24-40:6.

Given this history, the Undersigned will allow Plaintiffs to take a second, limited deposition of Mr. Matthews, consistent with the procedures outlined below. I am allowing this second, **limited** deposition because Mr. Matthews testified that he could not recall the names of certain passengers and crew members and that reviewing his statement would likely refresh his recollection. However, I will not compel RCCL to provide to Plaintiffs a copy of Mr. Matthews' statement (which I have already determined is protected by the work product doctrine) because Plaintiffs have not shown a substantial need for the production of this statement. For purposes of waiver, there is a dramatic difference between a witness who *voluntarily* reviews a document to prepare for testimony and one who is *ordered* to review a statement.

### 2.    James Nazar, Staff Captain

James Nazar provided a nine-page statement dated December 16, 2019. [ECF No. 77-3, item 2]. Mr. Nazar also prepared a five-page event timeline. *Id.* at item 15; [ECF Nos 83-1, item 4; 186].

Mr. Nazar testified that he had two meetings with outside counsel, but he could not recall when the second meeting took place or how long it lasted. [ECF No. 58-2, p. 2 (126:4-11)]. He could not recall how many revisions he made to his statement, how many pages the statement was, whether there were any attachments, or if he kept a copy. *Id.* at

128:11-14; 128:124-129:20. He explained that the incident was very difficult for him because some people were badly hurt and children died. *Id.* at 129:21-130:10. The statement was not something he wanted to read, review, or remember. *Id.* The last time Mr. Nazar reviewed his statement was in August of 2020. *Id.* at 130:11-13.

Mr. Nazar also could not remember whether he prepared a timeline related to the incident, separate from his statement. *Id.* at 130:22-25; 132:10-133:8.

The Undersigned will not require Mr. Nazar to sit for a second deposition or compel Defendant to produce to Plaintiffs copies of Mr. Nazar's statement or event timeline. Although Mr. Nazar did not want to recall the incident, the deposition excerpts filed by Plaintiffs do not reveal any answers to factual questions about the incident or related to the incident which would likely be in Mr. Nazar's statement or event timeline.[13]

In other words, the deposition excerpts filed by Plaintiffs do not reveal any questions concerning factual details which would be answered by the statement/event timeline. Plaintiffs' questions to Mr. Nazar concerned when and how long he met with outside counsel, how many revisions he made to his statement, the length of his statement, whether it had any attachments, whether Mr. Nazar kept a copy of the statement, and whether there was a timeline separate and apart from the statement. The

---

[13]     Based on the excerpts filed by Plaintiffs, Mr. Nazar's deposition transcript was more than 133 pages. Thus, he must have provided *some* relevant testimony to Plaintiffs.

answers to those questions are either in Defendant's initial privilege log [ECF No. 77-3] or are not the sort of information that is contained in the statement and event timeline.

For this reason, the Undersigned will not order the second deposition of Mr. Nazar or the production of his statement and/or event timeline.

### 3.      Flavia Fernandez Machado, Guest Services Manager

Flavia Fernandez Machado provided a 10-page witness statement taken on December 16, 2019 and January 14, 2020. [ECF No. 77-3, item 3].

Ms. Machado testified that she signed her statement sometime in July of 2020 and had not looked at it since that time. [ECF No. 158-3, p. 2 (10:10-21; 11:10-14; 12:5-8)]. She believed a copy of the statement (and a list with the names of passengers and their cabin numbers) would be in her email. *Id.* at 11:22-25. She testified that she did not review her statement since July 2020 because she did not believe it was needed. *Id.* at 12:9-25. She stated that "[e]verything [she] wrote[,] [she] remember[ed]," though "there might be . . .·very, very small details, such as times, specific times that [she] wrote at that time that [she] [would not] maybe recall . . . but in general the most important things [she] [did]·remember." *Id.* at 13:3-13.

Ms. Machado learned of the volcanic eruption from Gianluca Corneli, the Hotel Director. *Id.* at 14:24-15:6. Mr. Corneli told Ms. Machado to meet him at the gangway. *Id.* at 16:2-5. When Ms. Machado arrived at the gangway, Mr. Corneli was speaking with the tour operator. *Id.* at 17: 10-25. Although Ms. Machado could not initially remember the

name of the tour operator, after some prompting from Plaintiffs' counsel, she testified that she believed it was White Island Tours. *Id.* at 18:1-23.

Ms. Machado identified the Guest Services Officer as "Amy," but she could not remember her last name. *Id.* at 29:6-17. She also could not remember the first name of a female passenger whose last name was Browitt. *Id.* at 40:19-41:3.[14] And she could not remember which family member from the Ooi family she spoke with. *Id.* at 56:18-20.

Subject to the procedure discussed below, the Undersigned will allow Plaintiffs (if they so choose) to take a second, limited deposition of Ms. Machado. However, given the limited information Ms. Machado did not recall (i.e., the last name of the Guest Services Officer, the first name of one passenger, and the full name of another passenger), Plaintiffs may decide it is more cost-effective to simply ask Defendant to provide the missing names, or decide that the expense of taking a second deposition of Ms. Machado in order to obtain at most three names is not justified, given the late posture of the case (substantive motions have already been filed) and the likely limited value of this information to the issues being litigated by the parties.

Alternatively, Plaintiffs can use Federal Rule of Civil Procedure 31's Deposition by Written Question procedure. The Court does not need to be involved in the details of how

---

[14] The Undersigned has reviewed Ms. Machado's statement *in camera* and notes that Ms. Browitt's first name is not contained in the statement. However, perhaps a review of the statement may, nonetheless, jog Ms. Machado's memory.

Plaintiffs obtain these names (or not) and trusts that defense counsel will provide any needed assistance.

In any event, the Undersigned will not compel Defendant to produce to Plaintiffs Ms. Machado's statement. Plaintiffs may (but are not required to) take another limited deposition of Ms. Machado.

### 4. Gavin Smith, Vice President and Managing Director of RCL

Gavin Smith provided two witness statements. [ECF Nos. 77-3, items 5-6; 92-7; 92-8]. A four-page statement dated October 22, 2020 and an 18-page statement[15] dated August 27, 2021. *Id.* at 77-3, items 5-6. "RCCL obtained [the four-page] statement from Mr. Smith in response to a request by WorkSafe, New Zealand's primary workplace health and safety regulator, as part of their investigation following the subject incident." [82-1, ¶ 10].

Mr. Smith testified that he last reviewed his 18-page statement in August of 2021, when he sent it back to counsel and kept a copy of it in his email, subject to RCCL's email retention policy. [ECF No. 158-4, p. 3 (34:4-17)]. Mr. Smith believed that the statement was "an accurate account of [his] experience . . . after it became known to [him] that there

---

[15]    Mr. Smith described this document as "18 to 20 pages." [ECF No. 158-4, p. 2 (33:8)]. RCCL's initial privilege log incorrectly stated that Mr. Smith's August 27, 2021 statement was three pages. [ECF No. 77-3, item 6]. During Mr. Smith's deposition, counsel for RCCL stated that he had advised Plaintiffs' counsel of this typographical error in the privilege log the day before and that the statement was actually 18 pages. [ECF No. 158-4, p. 8 (57:12-58: 17)].

had been an explosion." *Id.* at 35:3-6. He did not review his statement before his deposition because he had not "participated in a forum like this before" and "was satisfied that [his] recollections of the events post-eruption would satisfy the needs of this forum." *Id.* at 35: 12-15.

Mr. Smith testified that no one read the 18-page statement to him. *Id.* at 36:23-25. When Plaintiffs' counsel asked Mr. Smith if anyone instructed him not to read this statement, RCCL's counsel instructed Mr. Smith not to answer, asserting the attorney-client privilege. *Id.* at 37:1-9.

In addition to this 18-page statement, Mr. Smith testified that he provided a three to four-page statement and had attended a workplace safety hearing on Zoom conducted by WorkSafe. *Id.* at 37:18-38:9. Mr. Smith testified that he provided the statement to Royal Caribbean's New Zealand counsel before the Zoom hearing and counsel provided it to the workplace safety group conducting the investigation. *Id.* at 38:10-39:6. Mr. Smith could not recall if the WorkSafe Zoom meeting was recorded. *Id.* at 58:19-21.

When asked about the four-page statement, Mr. Smith referred to his "memory of this [as] not great." *Id.* at 39:7-15. He explained that there was "a brief meeting on Zoom, and a statement was created based on [his] recollection, and then [he] signed it and returned it", but that he was "just less clear about that statement." *Id.* at 40:1-20. "[T]he specifics of it [he] [was] just less clear." *Id.* at 40:19-20. Mr. Smith stated that he was "really

not able to provide a detailed recollection of [the] content . . . of that statement." *Id.* at

42:9-10.

Mr. Smith believed he provided this statement in November of 2021, before the

second anniversary of the eruption. *Id.* at 39:18-25. Later, in response to questioning from

Plaintiffs' counsel, Mr. Smith began to doubt that the statement was in November 2021

and that it could have been in late 2020. *Id.* at 54:6-17. He admitted that he did not know

whether the statement was prepared in 2020 or 2021. *Id.* at 54:18-21. RCCL's counsel

clarified during the deposition that the statement was created in October 2020. *Id.* at 55:1-

6.

The last time Mr. Smith looked at the four-page statement was the day he signed

it and provided it to New Zealand counsel. *Id.* at 41:21-25. Mr. Smith did not review the

four-page statement before his deposition because he "didn't think that [it] was

particularly relevant to [his deposition]" and he was "unclear about what [they] were

going to talk about [that day]." *Id.* at 41:18-20.

When asked if there was a document which he could review to refresh his

recollection of the contents of the four-page statement, Mr. Smith responded that he could

request a copy of that statement. *Id.* at 42:12-16.

Plaintiffs' counsel then asked RCCL's counsel to provide Mr. Smith with a copy of

the statement. *Id.* at 42:24-43:1. RCCL's counsel refused: "We've had this conversation in

the context of every -- almost every other deposition that you've taken of individuals

whose statements were deemed to be protected by the Court. You chose to take their depositions, and we provided them for you to take their depositions." *Id.* at 43:3-9.

RCCL's counsel indicated that he was willing to show the statement to Mr. Smith, **provided** the parties would stipulate that Plaintiffs would not get the statement because the statement was protected:

> That statement was deemed to be protected by the Court. And unless we can get some sort of stipulation that the protection remains, and considering that this is not a duces tecum deposition, then we're not going to provide him anything. But, again, I'm happy to give him the statement so he can reference [it,] with the agreement that we do not lose that protection that the Court gave us.

*Id.* at 43:20-44:3.

The Undersigned will not permit Plaintiffs to take a second deposition of Mr. Smith. Although Mr. Smith acknowledged that his memory was "not great" and he expressed confusion about what year the four-page statement was prepared, Plaintiffs' counsel did not ask Mr. Smith any specific, substantive questions which would be answered by the information contained in the statements.

In *In re Veeco Instruments, Inc. Sec. Litig.*, for example, the district court affirmed the magistrate judge's ruling that certain "materials created [by outside securities counsel (and their agents)] in connection with [an internal] investigation were protected work product under Rule 26(b)(3)." No. 05-MD-01695 CM GAY, 2007 WL 724555, at *2 (S.D.N.Y. Mar. 9, 2007). The district court further affirmed the magistrate judge's determination that the lead plaintiff had not established a substantial need for those

documents because it could obtain substantially equivalent information through deposition testimony. *Id.* at *12.

In discussing the parameters of the to-be-taken depositions, the district court in *Veeco* explained that while the "lead plaintiff [could not] ask the witnesses what they were asked by . . . [outside securities counsel] (or those acting at the attorneys' behest) or what they told such individuals in interviews, [the ]plaintiff [was] free through depositions to **ask questions pertaining to the claims and defenses in this action**" and "**[could] ask the very same questions that [outside counsel attorneys] would have asked during their interviews**[] and the witnesses [could not] refrain from answering on the ground that they gave answers to the same questions to [outside counsel]." *Id.* (emphasis added).

Here, with respect to the 18-page statement, counsel asked Mr. Smith how long the document was, when he sent it back, if he kept a copy, and whether it was read to him by someone. The first two questions are answered by RCCL's initial privilege log. [ECF No. 77-3, item 6] and RCCL's counsel's statement correcting the record about the typographical error concerning the length of the statement. The latter two questions would not be in the statement itself and Mr. Smith testified that no one read the statement to him.

Plaintiffs' counsel also asked Mr. Smith if he gave other statements besides the 18-page statement and Mr. Smith stated he prepared a statement in connection with the WorkSafe event. *Id.* at 37:18-38:9. He described the circumstances under which that

statement came about. *Id.* at 38:11-39:15 ("[A]s a result of [a] conversation with the counsel in New Zealand[,] they asked me questions about my recollection, and that was put into a statement for my review and signature.").

Although Mr. Smith admitted his memory was "not great" and that he was "less clear" about that statement, Plaintiffs' counsel did not ask specific questions whose answers would be contained within the contents of either statement.

Because Plaintiffs' excerpts do not reveal questions which can be answered by the contents of either witness statement, the Undersigned will not compel Mr. Smith to sit through a second deposition or require Defendant to provide the statements to Plaintiffs.

### 5.    Carlos Gustavo Diaz, Chief Officer Safety

Carlos Gustavo Diaz provided a four-page statement taken on January 13, 2020. [ECF No. 77-3, item 7].

There were several instances during Mr. Diaz's deposition where he did not recall a detail or fact. Mr. Diaz could not recall the name of the bridge officer who was on duty at the time of the eruption. [ECF No. 158-5, p. 2 (10:2-9)]. Mr. Diaz stated he "could not recall very well" the details of "exactly what was discussed" during a meeting with Cecilia Wong and Craig Darling at the gangway, following the incident. *Id.* at 14: 4-5. He remembered "it was about the incident itself" and that some of the ship's passengers had been "affect[ed] by the incident." *Id.* at 14:17-24. He also could not remember whether

41

there was any plan in effect or discussed at the meeting regarding the incident. *Id.* at 14:25-15:9.

Mr. Diaz could not remember the name of a passenger who had been on the excursion to the volcano or the names of that passenger's friends. *Id.* at 18:1-19. He also could not remember the name of Royal Caribbean's shoreside representative whom he met at the hospital, which office she worked from, and whether she had traveled from Australia or Miami. *Id.* at 19:4-20:19.

Mr. Diaz spoke to three injured passengers at the hospital: a woman and a couple. *Id.* at 24:7-22. However, he could not remember their names or provide a summary of the conversations he had with these three passengers. *Id.* at 24:10-11; 25:19-25.

Mr. Diaz acknowledged that his statement would contain the details he could not remember and that reading his statement would refresh his recollection. *Id.* at 34:11-35:15. Plaintiffs' counsel then asked Defendant's counsel to provide a copy of the statement to Mr. Diaz. *Id.* at 35:24-36:11. RCCL's counsel refused because the Court had already deemed the statement protected by the work product doctrine and counsel was concerned that if he provided the document to the witness, then Plaintiffs would claim they were entitled to see it. *Id.* at 36:12-24; 37:21-24.

As occurred during other depositions, RCCL's counsel offered to show the statement to Mr. Diaz during the deposition, provided that the parties would agree to a stipulation that by showing it to Mr. Diaz, RCCL would not have waived the statement's

work product protection. *Id.* at 39:22-40:25; 41:24-42:6; 50:16-20. Plaintiffs refused this offer. *Id.* at 41:1-20; 42:6-43:3; 52:22-53:12. Defendant's counsel also proposed that Plaintiffs obtain the information Mr. Diaz could not remember by propounding interrogatories or by having RCCL's counsel provide the missing passenger names. *Id.* at 44:1-46:11. Plaintiffs' counsel continued to insist that the statement be provided to the witness, pursuant to Rule 612. *Id.* at 46:21-48:2; 49:20-59:3; 51:5-6.

Because Mr. Diaz's memory concerning the gangway meeting after the eruption appears fuzzy, he could not remember certain names, and could not recall some details about the conversations he had with injured passengers at the hospital, the Court will exercise its discretion and allow Plaintiffs to take a limited deposition of Mr. Diaz after he has had an opportunity to refresh his recollection by reading his statement, subject to the procedures discussed below. The Undersigned will not, however, require Defendant to produce Mr. Diaz's statement.

### 6.   Laura Bernard, Assistant Front Desk Manager

Laura Bernard provided a four-page statement on January 12, 2020. [ECF No. 77-3, item 8].

At the outset, the Undersigned notes that Ms. Bernard had a tendency to qualify her answers with words like "[f]rom what I remember" and "[n]ot that I remember." [ECF No. 158-6, p. 2 (27:2; 28:19)]. However, none of the information Plaintiffs cite to in the excerpts is in Ms. Bernard's statement.

Plaintiffs' counsel asked Ms. Bernard what she was doing on December 10, 2019 in relation to the incident. *Id.* at 26:10-23. Ms. Bernard provided a recitation of what she did that day, including preparing an Excel spreadsheet. *Id.* at 26:14-21. Plaintiffs' counsel then asked Ms. Bernard if that was all she did that day and she stated "[y]es." *Id.* at 26:22-25. Plaintiffs' counsel began to ask Ms. Bernard what she did on December 11th and Ms. Bernard, appearing to respond to the previous question about December 10, 2019, added, "[f]rom what I remember." *Id.* at 27:1-2.

There was no response in this exchange where Ms. Bernard stated she did not remember or did not recall a specific fact; she merely stated that this was what she remembered doing on December 10, 2019. To the extent Plaintiffs' counsel was asking about December 11, 2019, Ms. Bernard's statement would not include this information because it does not include any events past December 10, 2019.

Plaintiffs' counsel also asked Ms. Bernard whether she was working on the list (i.e., the Excel spreadsheet) on December 12, 2019 and whether "between December 12 of 2019 and [Ms. Bernard's] meeting with the lawyers in January of 2020[,] . . . [she was] doing anything relating to the incident[.]" *Id.* at 27:11-16; 28:15-29:10. As noted above, that information is not in Ms. Bernard's statement because the statement does not go past December 10, 2019.

Finally, Plaintiffs' counsel asked Ms. Bernard about "any conversations at any point after the eruption with Royal Caribbean['s] shore excursion department regarding

the volcano tour." *Id.* at 34:17-21. Ms. Bernard's statement covers two dates, December 9-10, 2019, and does not discuss any conversations she may (or may not) have had with the shore excursion department.

Because reading the statement will not refresh Ms. Bernard's recollection, the Undersigned will not permit Plaintiffs to take another deposition of Ms. Bernard and will not compel Defendant to produce Ms. Bernard's statement.

### 7.      Daragh Robbins, Strategic Sales and Support Manager

Daragh Robbins prepared a ten-page statement taken on March 19, 2020. [ECF No. 77-3, item 11].

Approximately a week after the incident, Mr. Robbins approached his direct manager, Miranda Hinkins, about drafting a summary of his recollection. [ECF No. 158-7, p. 2 (10:2-15; 13:14-18)]. Soon after, a legal team from Australia assisted Mr. Robbins by "taking down the statement." *Id.* at 11:1-3; 13:19-21. Mr. Robbins explained that he drafted the statement in his own words and the legal team "helped [him]" by "format[ting] it correctly." *Id.* at 11:4-13. He met in person with the legal team and they "went through what [he] had written." *Id.* at 13:5-13.

The last time Mr. Robbins viewed the statement was when he signed the final version. *Id.* at 11:17-20. He believed it was eight pages long. *Id.* at 24-25. Mr. Robbins kept a printed copy of the statement. *Id.* at 14:3-19. He testified that he could not confirm the

number of pages without finding the statement. *Id.* at 20:10-15. RCCL's initial privilege log reflects that the statement was 10 pages long. [ECF No. 77-3, item 11].

Mr. Robbins did not review the statement before his deposition because he "ha[d] a clear recollection of what happened." [ECF No. 158-7, p. 2 (12:12-20)]. "Apart from the, like, smaller details of date -- exact dates, [Mr. Robbins believed he] ha[d] a pretty good recollection of what happen[.]" *Id.* at 20:2-4; *id.* at 20:22-23 ("I remember every -- pretty much the majority of it, apart from minor details like dates.").

Plaintiffs' counsel asked Mr. Robbins for the date on the statement. *Id.* at 14:23. When Mr. Robbins responded that he did not "know the exact date on the statement," Plaintiffs' counsel asked Mr. Robbins if he could go find the statement so he could refresh his recollection as to its date. *Id.* at 14:25-15:1. Defendant's counsel instructed Mr. Robbins not to do so because this was not a *duces tecum* deposition and the statement had been deemed privileged by the Court. *Id.* at 15:2-5.

Counsel for Plaintiffs then asked the witness if there was a document that would refresh his recollection about when he signed the statement and Mr. Robbins responded that "[t]he only thing that would refresh [his] memory [was] the statement," which was somewhere in his house. *Id.* at 15:6-23.[16] He did not know how long it would take him to find the document and he did not know exactly where it was located. *Id.* at 18:1-5.

---

[16]   Mr. Robbins was in his house at the time of his remote videoconference deposition. [ECF No. 158-7, p. 3 (15:13-23)].

Mr. Robbins testified that he believed he signed the document in December 2019 and did not recall signing any documents in March 2020. *Id.* at 21:5-20. RCCL's privilege log lists the date of the document as March 19, 2020. [ECF No. 77-3, item 11]. When Plaintiffs' counsel asked Mr. Robbins about the March 19, 2020 date, Mr. Robbins acknowledged that his timeline was "off" and stated that he remembered "something prior to [COVID], which possibly [was] [him] signing that document." But he could not recall "the exact date" and was "not entirely sure." [ECF No. 158-7, pp. 4-5 (21:21-25; 23:2-18)].

The deposition excerpts filed by Plaintiffs show that Mr. Robbins incorrectly remembered the number of pages in his statement and the date he signed it. Defendant's initial privilege log answers these two questions. [ECF No. 77-3, item 11]. Plaintiffs have not pointed to any other questions Mr. Robbins could not recall or could not remember whose answers would be contained within the contents of his statement. For this reason, the Court will not permit Plaintiffs to retake Mr. Robbins' deposition or obtain Mr. Robbins' statement.

### 8. Josephine Furfaro, Executive Guest Escalations and Incidents

Josephine Furfaro provided a 12-page statement which was taken on March 24, 2020 and April 9, 2020. [ECF No. 77-3, item 11].

Ms. Furfaro visited injured passengers at a hospital in Christchurch, New Zealand and assisted family members. Ms. Furfaro testified that she spoke with family members

from the Ho family,[17] the Browitt family, and the McGill family. [ECF No. 158-8, p. 2 (20:23-21:6)]. She stated that these were the names that she could remember and that she "suspect[ed]" her statement would include all of the names of the families she helped. *Id.* at 21:5-10. Plaintiffs' counsel asked Ms. Furfaro if reading her "statement . . . would refresh [her] recollection as to what family members [she] spoke to at Christchurch hospital" and Ms. Furfaro responded that she "believe[d] so, yeah." *Id.* at 21:25-22:4.

Plaintiffs' counsel then asked Defendant's counsel to allow Ms. Furfaro to read her statement. *Id.* at 22:5-9. Defendant's counsel responded that he did not:

> have a problem with [the witness] looking at the statement subject to the stipulation that that does not constitute a waiver of the work product doctrine. Alternatively, [he] [could] provide the names from the statement that was deemed protected by the [C]ourt, provided, again, [that the parties] have an agreement that [Defendant] [does not] waive the work product doctrine and [Defendant] [does not] have to turn over the statement.

*Id.* at 22:8-17. Plaintiffs' counsel did not agree to either proposal, stating that it was "contrary to what the rules say" and they would "just leave this for an issue for the [C]ourt." *Id.* at 22:18-22.

Ms. Furfaro could not remember the names of all the family members she helped or spoke with at the hospital. The Undersigned will allow Plaintiffs to retake Ms. Furfaro's deposition on this one topic, after Ms. Furfaro has refreshed her recollection by

---

[17] Ms. Furfaro later testified that she did not recall the correct spelling, but the family member was Allen Ho and the injured passenger was Devon Ho. [ECF No. 158-8, p. 3 (23: 18-24)].

reading her statement and subject to the procedures and limitations below. However, Plaintiffs may find it more cost-effective and less time-consuming to take Defendant's counsel's offer and obtain a list of these names in lieu of deposition. Alternatively, as noted earlier, Plaintiff can use the deposition-by-written-question procedure. In any event, the Court will not require Defendant to produce Ms. Furfaro's statement.

### 9.    Craig Darling, RCCL Chief Security Officer

Craig Darling did not complete a statement. He completed an unsigned event timeline, with exhibits. [ECF Nos. 77-3, item 14; 83-1, item 3]. RCCL filed the documents under seal pursuant to the Court's Order. [ECF Nos. 171; 174].

Mr. Darling testified that he could not recall the date he got back on the ship in Wellington, New Zealand, but stated that he could potentially find out, if he still had "a flight ticket or something that would indicate" that information. [ECF No. 158-9, p. 2 (43:12-24)]. He said it was the date the ship was docked in Wellington. *Id.* Mr. Darling could not "quite remember" if Wellington "was a planned port of call or an unplanned port of call." *Id.* at 43:25-44:15.

Mr. Darling could not recall the names of all the crew members who were on the excursion at the time of the eruption. *Id.* at 45:23-46:3. He testified that "[a]t the time of the incident, [he] would have known the names, but [he] could not tell [Plaintiffs' counsel] right now[.]" *Id.* at 46:1-3. He stated that he would have obtained that information in the crew manifests and the shore excursion manifest. *Id.* at 46:4-8.

Plaintiffs' counsel asked Mr. Darling for the "time everyone left the vessel" and Mr. Darling said he could not remember because it was "so long ago." *Id.* at 48:6-9.

Mr. Darling testified that he did not review the event timeline he created before his deposition. *Id.* at 48:10-12.

Plaintiffs' counsel noted that there had been "a couple of times throughout . . . [the] deposition where [Mr. Darling] couldn't give [counsel] the exact dates or the exact time in response to [a] question" and asked Mr. Darling if "the timeline [would] help [him] answer those questions with more specificity[.]" *Id.* at 49:21-50:1. Mr. Darling responded that:

> The timeline effectively would be just the time that the person dinged their card. So if anything, it would be a factual piece of information that would say that person went off. As an example, 11:05, 14:06 or whatever. Whatever time they punched their card when they went off the gangway. That[] [was] basically what[] [was] going on.

*Id.* at 50:3-11. It would list the time when the passengers left the vessel to go on the excursion. *Id.* at 50:13-16. Mr. Darling acknowledged that he did not have that information at the moment. *Id.* at 50:17-19. But he indicated that the timeline would have that information. *Id.* at 52:13-18 ("Q. Right. But the timeline would have the exact time the passengers actually left the vessel, correct? . . . . THE WITNESS: Yes, that would be correct.").

The excerpts filed by Plaintiffs show that Mr. Darling could not answer three questions: (1) when he rejoined the ship in Wellington; (2) the name(s) of the crew

member(s) who were on the excursion at the time of the eruption; and (3) the exact times

each passenger left the vessel to go on the excursion.

    With respect to the first item, Mr. Darling testified that it would have been the day

the vessel was docked in Wellington. With respect to the second item, RCCL's answers

to Plaintiffs' Initial Interrogatory No. 1 provided a list of the individuals who were on the

excursion, including Yao Chen, the only RCCL employee on the list. [ECF No. 77-1, p. 5].

    Lastly, the third item -- the exact time each passenger left the vessel -- is not

information the Undersigned would expect Mr. Darling to recall, based off his memory

and based on his own personal knowledge. According to Yao Chen's already-produced

statement (attached to Plaintiffs' Statement of Undisputed Facts), there were 37 guests,

plus Ms. Chen on the excursion. [ECF No. 128-12, ¶ 13]. Unless Mr. Darling has a

photographic memory, the Undersigned would not expect Mr. Darling to be able to rattle

off the exact times each excursion-bound passenger left the vessel, even 10 minutes after

completing his timeline.

    Nonetheless, to the extent Plaintiffs need the exact times each passenger left the

ship to go on the excursion, that information is in an exhibit -- REF 9(a) -- to Mr. Darling's

timeline. Defendant will provide a copy of only REF 9(a), limited to the times each

passenger left the ship, and may redact any unnecessary information. The Undersigned

will not, however, order Defendants to produce Mr. Darling's timeline. "[T]he work

product privilege need not be invaded when the benefits of disclosure would prove to be

minimal, at best." *TIG Ins. Co. v. United Nat'l Ins. Co.*, No. 05-60672-CIV, 2006 WL 8431479, at *8 (S.D. Fla. June 23, 2006).

### 10.   Gianluca Corneli, Hotel Director

Gianluca Corneli provided a nine-page statement taken on December 16, 2019. [ECF No. 77-3, item 1].

Plaintiff cites only the following exchange from Mr. Corneli's deposition:

Q. Did you review your 9-to-10 page statement in preparation for today's deposition?

A. No, I didn't.

[ECF No. 158, p. 20 (citing [ECF No. 158-10, p. 3 (15:5-7)].

The fact that Mr. Corneli did not review his statement, without more, does not entitle Plaintiffs to a copy of this work product protected document. Nor are Plaintiffs entitled to re-take Mr. Corneli's deposition, after he has reviewed his statement. Plaintiffs have not cited to any portion of Mr. Corneli's deposition wherein he states that he cannot remember something and that the answer is likely in Mr. Corneli's statement.

## V.   The Undersigned's Rulings

For those witnesses whose statements and timelines do not mention the facts they did not recall, there is no actual discovery dispute because a review would not have mattered -- i.e., the witness' recollection would not have been (and could not have been) refreshed. For those few witnesses whose witness statements mention information which might have refreshed their recollection, both sides have legitimate points.

Plaintiffs have an understandable desire and need to obtain testimony from fact witnesses whose recollections might be refreshed by reviewing a document subject to the work product doctrine. On the other hand, defense counsel had a logical concern about not generating a waiver of the work product doctrine.

The Undersigned finds that there is an analytical difference between an attorney who voluntarily *chooses* to have her client's recollection refreshed through review of a work product document and a witness who is subject to a Court Order *requiring* a review of a privileged document to refresh recollection. A witness who is compelled to review a privileged document to refresh recollection is not engaged in an activity which should lead to a waiver.

As one court explained:

> Justice requires a different result where the deponent is compelled to use . . . a [protected or privileged] document to refresh [his or her recollection]. Finding that [the witness] ha[s] waived the work-product privilege by complying with this order would be tantamount to ordering a waiver of the privilege. This, of course, is beyond the power of the Court, except in the most unusual of cases. Thus, by complying with the order of this Court that [the witness] refresh her recollection with such privileged documents as necessary, the deponent will not waive the work product or attorney client privileges.

*Laxalt v. McClatchy*, 116 F.R.D. 438, 455 (D. Nev. 1987).

Both sides have shown legitimate, albeit competing, interests. To balance the legitimate interests of each side, I exercise my considerable discretion over discovery matters by issuing a ruling designed to satisfy the bona fide litigation needs of both sides:

## The Procedure

Specifically, Plaintiffs may retake, on an **extremely limited** basis, the depositions of those few witnesses who have witness statements which mention factual issues triggered by one or more deposition questions. The witness will be required to review the statement before the resumed deposition begins. The witness will then be asked *if* his or her recollection (about a specific factual topic, such as the name of a passenger or fellow employee) was refreshed by their statement. If the answer is "no," then no further inquiry on that point is permitted. If the answer is "yes," then the witness will testify about his or her refreshed recollection (e.g., I spoke to a passenger named Mary Smith at the hospital after the volcano erupted) and the attorney can ask any logical follow-up questions.

Plaintiffs will need to lay a foundation for each permissible factual topic because "[t]he 'principal requirements' for permitting a witness to use a document to refresh his recollection are 'that the witness demonstrated a need for having his memory refreshed and that the paper used had that effect.'" *Espinoza v. Galardi S. Enters., Inc.*, 772 F. App'x 768, 770 (11th Cir. 2019) (quoting *Thompson v. United States*, 342 F.2d 137, 139 (5th Cir. 1965));[18] *Butler Mfg. Co. v. Americold Corp.*, 148 F.R.D. 275, 278 (D. Kan. 1993) ("A showing must be made that the document actually influenced the witness' testimony.").

---

[18]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

However, Defendant will not need to produce the privileged materials reviewed because this procedure does not result in a waiver. If defense counsel shows non-privileged, non-work product material to his client before the resumed deposition to refresh her recollection, then the document will be produced by Defendant at the deposition.

Because most of the witness statements and timelines are not going to be helpful for recollection-refreshing purposes, there will be only, at most, a few resumed depositions, and those will likely last only, at most, *a few minutes.*

## VI.   No Fee-Shifting Award

The Undersigned will not impose a fee-shifting award pursuant to Fed. R. Civ. P. 37(a)(5)(A). As discussed above, the parties' positions and competing interests were substantially justified. "[A] party seeking to preserve work product protection over writing used to refresh recollection may seek relief from the court before disclosing the protected materials." *Gutherless*, 2021 WL 5771285, at *3. Additionally, RCCL's counsel offered multiple times (and in various ways) to produce to Plaintiffs the missing information, provided that the work product protection was not waived. Under these circumstances, the imposition of a fee-shifting award is not warranted.

## VII.   Conclusion

Defendant will produce Mr. Matthews, Ms. Machado, Mr. Diaz, and Ms. Furfaro for a second, limited deposition. Alternatively, Plaintiffs may decide that they do not

want to retake some or all of these depositions, or that they would prefer to obtain the missing details (i.e., names, dates, etc.) from Defendant's counsel or deposition-by-written-question in lieu of deposition.

If Plaintiffs wish to pursue some or all of these depositions, then before each deposition, Defendant will show the witness his or her statement. By showing the witness the statement (and complying with this Order), Defendant is not waiving the protection afforded by Fed. R. Civ. P. 26(b)(3) and the work product doctrine.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 26, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record

56